# Harry A. DuPont
## *v.*
## The Sanitary District of Chicago.

*Opinion filed June 16, 1903.*

1. WAIVER—*when objection to power of petitioner to condemn is waived.* A defendant in a condemnation proceeding who files a cross-petition for damages, and submits that issue to the jury without objecting to the power of the petitioner to institute the proceeding, waives his right to raise that question.

2. PRESUMPTIONS—*existence of power does not raise a presumption of its exercise.* The existence of a power in a city to establish a dock line on a river does not raise a presumption that such dock line has been established.

3. EMINENT DOMAIN—*when damages are confined to land described in petition.* If defendant, by his instructions, interprets his cross-petition as claiming damages to lands not taken, it is not error to refuse instructions telling the jury that if the evidence showed petitioner was proposing to take lands not described in the petition the defendant would be entitled to their value.

4. SAME—*land taken must be determined from the pleadings.* It is not competent for the jury, in a condemnation case, to determine that land is being taken which is not described in the petition nor brought into the case by any pleading.

5. SAME—*when attorney has no implied authority to bind petitioner by stipulation.* An attorney who is conducting a condemnation suit for a corporation has no implied authority to bind the petitioner by a stipulation respecting its plans or methods of construction.

6. SAME—*stipulation for method of construction should be made a part of the judgment.* If a stipulation by the petitioner specifies a particular method of construction, which tends to reduce defendant's damages, the condemnation judgment should vest the rights of the petitioner subject to the performance of the agreement.

7. SAME—*when instruction in condemnation is misleading.* An instruction in a condemnation suit is misleading which first tells the jury that the market value of land actually taken cannot be reduced by benefits, and then states that such benefits must be confined not only to property not actually taken, but also to property of which the defendant will be actually deprived or which will be physically interfered with.

8. JURY—*jury cannot disregard testimony of an unimpeached witness.* The jury, in a condemnation case, have no right to absolutely disregard the testimony of unimpeached witnesses upon the question of the value of the premises, merely as the result of the jury's view of the premises.

Appeal from the Circuit Court of Cook county; the Hon. Abner Smith, Judge, presiding.

Robert A. Childs, and Charles Hudson, for appellant:

The city of Chicago has no power and is not authorized, by its charter or otherwise, to fix or establish dock lines along the south branch of the Chicago river. That stream is within the exclusive jurisdiction of the Federal government. *Chicago* v. *Law*, 144 Ill. 569; *Mobile* v. *Kimball*, 102 U. S. 697; *Canal Comrs.* v. *Sanitary District*, 191 Ill. 336; U. S. River and Harbor act of 1888, sec. 12; U. S. Stat. at Large, 51st Congress, sec. 12, pp. 454, 455; *Harmon* v. *Chicago*, 147 U. S. 396; 140 Ill. 374.

No presumption arises, from anything short of twenty years' adverse user, that an existing dock line has been fixed by municipal or other authorities. *Landers* v. *Town of Whitefield*, 154 Ill. 635.

The sanitary district has no authority to deepen or widen the Chicago river in the manner proposed, and is not authorized, under the laws of the United States, to take respondent's property, or any portion thereof, for such widening. U. S. River and Harbor act of September 19, 1890; U. S. Stat. at Large, 51st Congress, sec. 12, pp. 454, 455; *Chicago* v. *Law*, 144 Ill. 569.

In determining the property actually taken the plans of the improvement must be taken into consideration,— not merely the petition. *Johnson* v. *Railroad Co.* 111 Ill. 413; *Railroad Co.* v. *Kidder*, 21 id. 131; *Railroad Co.* v. *Thillman*, 143 id. 134; *Railroad Co.* v. *Birkett*, 62 id. 332; *Railroad Co.* v. *Railroad Co.* 112 id. 589; *Railroad Co.* v. *Railroad Co.* 105 id. 394.

The compensation for property actually taken, or the use, benefit or enjoyment of which will be directly or physically interfered with, cannot be reduced by considerations of benefit arising from the proposed improvements. *Railroad Co.* v. *Springer*, 171 Ill. 170.

Seymour Jones, and Will H. Beebe, for appellee:

The right to condemn is a preliminary question, to be settled by the court before the introduction of evidence to the jury, and unless raised by the defendant as a preliminary question it is waived. *O'Hare* v. *Railroad Co.* 139 Ill. 151; *Lieberman* v. *Railroad Co.* 141 id. 140; *Ward* v. *Railroad Co.* 119 id. 287; *Cahill* v. *North Peoria,* 149 id. 156.

This question cannot be raised by motion for a new trial. *Guyer* v. *Railway Co.* 196 Ill. 370.

Damages cannot be recovered for injury to a portion of the property not taken, when the whole tract remaining is not injured. *Page* v. *Railway Co.* 70 Ill. 324.

The amount awarded by the jury is perfectly consistent with the evidence and is in accord with the weight of the testimony, and will not be disturbed unless clearly against the evidence. *Railroad Co.* v. *Chicago,* 172 Ill. 198; *Railroad Co.* v. *Johnson,* 159 id. 434; *Braun* v. *Railroad Co.* 166 id. 434; *Railroad Co.* v. *Brewing Co.* 174 id. 547.

Mr. Justice Cartwright delivered the opinion of the court:

The amended petition of appellee, the Sanitary District of Chicago, filed in this case in the circuit court of Cook county, alleged that it had adopted a plan for deepening, widening and improving the south branch of the Chicago river to the uniform width of two hundred feet and a depth of thirty feet in the central portion of the channel, and that it would be necessary to acquire for such purposes four tracts adjoining the river, numbered 69, 70, 71 and 71*a*, being the parts of lot 1 in Fairbank's subdivision and of lots 1 and 2 in Morris & Johnson's subdivision and of an unsubdivided tract, which were south of a proposed new dock line and north of a dock line then existing. The petition stated that appellant had an interest in said premises, and prayed that the just compensation to be paid to the owners might

be ascertained.  Appellant filed his amended cross-petition, charging that in taking the lands described in the amended petition appellee would necessarily take other lands owned by him not described in said petition, which would necessarily be dredged out and taken and used by the appellee as a part of its drainage channel, and he prayed that he might be paid the value of the lands so designed to be taken.  A jury having been empaneled and sworn to ascertain and report the just compensation to be awarded, and having heard the evidence and viewed the premises, returned a verdict finding the compensation to be paid for the lands taken and described in the amended petition at $18,168.23, and that there were no damages to lands of appellant not taken.  After overruling a motion for a new trial the court entered judgment that on payment of the compensation so ascertained, and the costs, appellee should have the right to enter upon the tracts described in the amended petition, which were the lands between the proposed new dock line and the existing dock line.  From that judgment this appeal was taken.

One of the points presented by counsel is, that it was alleged in the petition that the petitioner had obtained permission of the Secretary of War to make the contemplated improvement, and such permission was not produced or offered in evidence, and therefore the petitioner did not show that it had authority to widen the river and bring the condemnation proceeding for that purpose. The right of the petitioner to institute the proceeding and condemn the land was a preliminary one, to be settled by the court before empaneling a jury to ascertain the compensation.  The defendant appeared and raised no such question, but filed his cross-petition and submitted the issue to the jury.  His right to question the power of the petitioner to condemn his property was thereby waived, and the objection cannot now be made. *O'Hara* v. *Chicago, Madison and Northern Railroad Co.* 139

Ill. 151; *Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 id. 370.

There was an existing dock along the river where the property sought to be taken was located. The petitioner fixed a line further north as a proposed new dock line, and in its petition described the land between the two lines. The defendant claimed that as shore owner he had title to lands outside of the present dock, submerged by the waters of the river, and that the line of the existing dock was not the true boundary of his lands. He also had a private slip extending substantially at right angles north from the main channel of the river on his lands, and he claimed compensation, by his cross-petition, for all lands south of the proposed new dock line, whether covered by water in the private slip or beyond the existing dock and submerged. There was no evidence that the existing dock constructed on the premises was on a dock line fixed or prescribed by the city of Chicago, but the court supplied the lack of evidence by a presumption of law stated in the following instruction:

"The court instructs the jury, as a matter of law, that the city of Chicago is authorized, by virtue of its charter, to fix and establish the dock line along the south branch of the Chicago river; that property owners owning property along the south branch of the Chicago river have no right to erect or construct buildings extending out into the river beyond the dock line established by the city council of the city of Chicago; and you are further instructed, as a matter of law, that in the absence of evidence to the contrary, you are bound to presume that the existing dock line is the dock line fixed and prescribed by the city council of the city of Chicago; and this is true even though you may believe, from the evidence, that the defendants in this case have title to property extending beyond said dock line out into said river."

The instruction advised the jury that the mere existence of a dock along the river raised a presumption that

the city of Chicago had fixed and established a dock line. The theory of the instruction was, that because the city had power to establish a dock line the law would presume that it had established one, in the absence of evidence to the contrary. We do not think there is any presumption that a power conferred upon a municipal corporation by its charter has been exercised merely because the power exists, and it was error to give the instruction.

The defendant asked the court to give three instructions to the effect that in considering what lands were taken, and the value of such lands, the jury were not confined to the amended petition; that defendant was entitled to receive the fair cash market value of all lands which the plans in evidence showed would be taken and used by the petitioner, and that the jury must consider such plans shown by the evidence as to what lands would be taken, and allow the market value of such lands, whether described in the amended petition or not. The court refused to give such instructions, but gave an instruction asked by the petitioner, that in fixing the compensation for lands actually taken, such compensation should be limited to the tracts actually described in the amended petition. So far as the cross-petition was concerned, it is somewhat difficult to determine upon what theory the case was tried by the parties. As already stated, the defendant, by his cross-petition, claimed that submerged land south of the present dock and under the private DuPont slip, which he claimed to own, would be actually taken; that the necessity for taking and using such lands was obvious, because the land would be dredged away, and he asked to have his compensation fixed as to such lands, on the ground that they would be so taken. The petitioner made no objection to the cross-petition, but on the trial the inquiry was mainly as to whether the submerged land would be damaged. Furthermore, the instructions given at the request of defendant were largely on the subject of damages to land not

taken, which was not involved in the case unless through the cross-petition, and one of said instructions contained the following: "The cross-petition has nothing whatever to do with the compensation for lands to be taken, but has only to do with damages to lands not to be taken." Counsel now say that defendant was entitled to compensation for the submerged lands claimed by him as lands taken; that if petitioner could show its plans for the purpose of showing a qualified or limited taking, the defendant might show the same plans to prove that petitioner would take land not described in the petition, and that the practice attempted by the petitioner would allow it to condemn a strip back from the river and then widen the river to meet the strip, without paying for the intermediate lands. The judgment in the case only gave the petitioner the right to enter upon the lands described in the amended petition, and if it should attempt to take other lands not so described the judgment would be no protection. The defendant having interpreted the cross-petition as claiming damages to lands not taken, and obtained instructions to that effect, we do not think the court was in error in refusing the instructions telling the jury that if the evidence showed the petitioner was in fact proposing to take lands not described in the peti tion, the defendant was entitled to their value. In this case, as in others, the issue is determined by the pleadings, and a jury cannot be left to determine what land is being condemned, regardless of the land described in the petition or cross-petition. It would not have been competent for the jury to decide what land was being taken which the petitioner did not ask for in its petition and which was not otherwise brought into the case by any pleading.

The court gave to the jury, at the request of the petitioner, the following instruction:

"The court instructs the jury that the petitioner, the Sanitary District of Chicago, has filed herein a stipulation

agreeing to excavate and remove the part sought to be taken in the case, and to construct along the new dock line of the real estate remaining and adjoining said tracts 69, 70, 71 and 71*a*, respectively, a new dock according to the specifications of the Sanitary District of Chicago for wooden docks along the south branch of the Chicago river, and that such stipulation is binding, as a matter of law, upon said petitioner to carry out the terms and conditions thereof."

There was no stipulation in the record as first filed in this court, but the bill of exceptions has been amended, on the application of petitioner, by the trial court, so as to recite that a stipulation was filed during the trial of the case, which was lost or destroyed, by which the petitioner agreed to do the acts mentioned in the instruction, and leave was given to file a copy in place of the original. The stipulation so incorporated, by amendment, in the bill of exceptions is signed only by the attorney for the petitioner, and there was no evidence of authority of the attorney to bind the petitioner by such an agreement. It is not ordinarily the province of an attorney for a corporation to determine upon plans or methods of construction or to enter into contracts of this kind for the corporation, and an attorney conducting a suit under the Eminent Domain act has no implied authority to so bind the petitioner. (*Toluca, Marquette and Northern Railway Co.* v. *Haws*, 194 Ill. 92.) The petition did not describe the manner in which the work would be done or bind the petitioner to build a new dock, and the judgment makes no mention of the stipulation and does not secure to the defendant any right under it. The work which the attorney agreed should be done would cost a large amount of money, and the effect of the instruction was to reduce the compensation awarded by the jury on the ground that the petitioner would be bound to do the work. Even if the attorney had authority to make the agreement it would not protect the defendant, as it was neither in the

petition nor judgment nor made a matter of record otherwise. In case of such an agreement the judgment should vest the rights obtained by the condemnation subject to the performance of the agreement, so as to insure its performance and protect the owner. *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher,* 128 Ill. 619.

It is urged, however, that the question cannot be raised because the parties, on the trial, considered the stipulation as binding and tried the case with the understanding that it was in evidence. It would make no difference whether it was in evidence or not unless it was made a matter of record, so that the title obtained was subject to the performance of the condition. Witnesses were examined on the trial as to damages on the assumption that the petitioner would build a dock, but if the right to have the dock built was not secured to the defendant, the petitioner would not be bound because of such evidence.

The defendant tendered an instruction to be given to the jury, to the effect that the market value of the property actually taken could not be reduced by benefits arising from the construction or operation of petitioner's channel, and that such rule was confined to rights of property and uses of property of which defendant would be actually deprived, or the use, benefit or enjoyment of which would be directly or physically interfered with. The court modified it and gave it to the jury, as follows:

"You are instructed, as a matter of law, that the market value of the property actually taken by the petitioner for the purposes specified in its petition cannot be reduced by benefits arising from the construction or operation of petitioner's drainage channel. Such benefits, if any, must be confined to property not actually taken and the rights in property and uses of said property of which the defendant will be actually deprived, or the use, benefit or enjoyment of which will be physically interfered with."

As modified, it was inconsistent in its statements. In the first part it stated that the market value of property taken could not be reduced by benefits, which must be confined to property not actually taken, and then it proceeded to tell the jury that such benefits must be confined not only to property not actually taken, but to property of which the defendant would be actually deprived or which would be physically interfered with. The instruction was confusing and misleading.

The court gave, at the request of petitioner, the following instruction:

"You are the sole judges of the credibility of the witnesses testifying in this case. You are to consider the evidence of all the witnesses testifying before you, but you are not bound to believe them unless you think them worthy of credit, and if you believe, from your view of the premises and from all the evidence in the case, that any witness has testified to the value upon said lands and property in question which was not the fair cash market value of such lands on January 28, 1902, then you may disregard his testimony in this respect."

The province of the jury is to weigh and consider the testimony of unimpeached witnesses, but this instruction authorizes them to absolutely disregard the testimony of witnesses not impeached and expressing an honest opinion on the question of value, and although corroborated. The law permits witnesses having some knowledge of values to give their opinions as to the value of property sought to be taken. It also permits the jury, who may not have the slightest knowledge of values, to view the premises for the purpose of observing their appearance and situation, the nature and condition of improvements, and to gain any information about them that could be obtained by a view. Under this instruction the jury might disregard all the evidence of witnesses for defendant on the subject of values merely as a result of looking at the premises. The instruction was wrong.

Many other questions arose on the trial which we think will not be likely to arise when the case is tried again, and we do not deem it necessary to comment upon them.

The judgment of the circuit court is reversed and the cause is remanded.     *Reversed and remanded.*