THE WEST CHICAGO PARK COMMISSIONERS, Appellant, *vs.* HENRIETTA A. BOAL, *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. COURTS—*mistakes of the clerk in writing record may be corrected by court at any time.* Mistakes of the clerk in writing the record may be corrected by the court at any time so as to make the record speak the truth.

2. EMINENT DOMAIN—*profits of saloon business are not an element to consider in fixing value of leasehold.* In fixing the value of the leasehold interest in a lot occupied by a saloon, the amount of business transacted in the saloon or the profits of a saloon business are not elements to be considered.

3. SAME—*when testimony of witness as to value should not be stricken out.* Testimony as to the value of a leasehold interest, given by a witness for the petitioner, should not be stricken out because he is unable to state, on cross-examination, what the value would be assuming the fact (of which there was no proof) that there was a first-class saloon business conducted there.

4. SAME—*either party may prove actual rent upon question of value of leasehold.* Upon the question of the value of a leasehold estate either party may prove the actual rent, but if the actual rent is not proved, it is improper to allow counsel, on cross-examination, to ask the witnesses if their opinion of the value of the leasehold would be different assuming that the property was bringing in, as rent, an amount greater than they considered was its rental value.

5. SAME—*what proof is improper on question of value of leasehold estate.* It is improper, in condemnation, to allow the owner of a leasehold estate to show that he had sub-let part of the premises for a saloon, and to prove whose beer was sold there, the average monthly profit of the saloon and the profit of the brewery on the beer sold.

6. SAME—*the fact that a building has recently been repaired is competent.* In determining the fair cash market value of leasehold premises occupied by buildings owned by the lessee it is proper to prove that the buildings had been thoroughly repaired shortly before the time the petition was filed.

7. SAME—*when instruction is not misleading in not fixing maximum beyond which jury should not go.* An instruction stating that the compensation to be paid for a leasehold estate is its fair cash market value, and which then proceeds to define just compensation as such a sum of money as will make the owner of the leasehold whole, leaving him no poorer than he was in consequence of the taking of the property, is not misleading in fixing a minimum without a corresponding maximum for the jury's guidance.

8. SAME—*sidewalk enhances value of property.* Evidence of the cost of a sidewalk built in front of the property condemned is admissible upon the ground that the value of the property is enhanced thereby, and it is accordingly proper to refuse an instruction telling the jury not to allow the owner anything for the cost or value of the sidewalk because the petitioner was not condemning sidewalks, and that sidewalks, when constructed, become the property of the city.

9. SAME—*fact that defendants offer no testimony does not require jury to accept petitioner's evidence of value.* If the jury in a condemnation case has viewed the premises, a defendant who has not appeared or offered any evidence is not conclusively bound by the testimony of the petitioner's witnesses as to value, and he is entitled to the judgment of the jury both on such testimony and the personal view.

10. SAME—*what is incorrect explanation of market value.* An instruction stating that the market value of property is the value it has to the present owner and not the value it will possibly have in the hands of the party condemning it is incorrect, in conveying the idea that the value which the present owner attaches to the property is the proper measure of damages.

11. SAME—*counsel may present considerations to jury based upon common knowledge.* In arguing the question of compensation to the jury in a condemnation case, counsel have a right to present considerations based upon matters of common knowledge, even though they have not been given in evidence.

12. SAME—*when new trial will not be awarded in condemnation.* Even though errors may have intervened in a condemnation case a new trial will not be granted by the Supreme Court, where it appears from a review of the whole record that there would be no better result for the appellant upon another trial.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BENJAMIN F. RICHOLSON, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, JOHN S. HUMMER, CHARLES A. McDONALD, FRANK P. DANISCH, SAMUEL FRIEDLANDER, BERNHARDT J. FRANK, WILLIAM A. CUNNEA, and J. HENRY KRAFT, (MATT B. PITTMAN, WALTER H. JACOBS, and L. M. ACKLEY, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This proceeding was instituted in the circuit court of Cook county by West Chicago Park Commissioners to ascertain the compensation to be paid for one hundred lots in Enos Ayres' subdivision of block 27 of the canal trustees' subdivision, bounded by Chicago avenue, Noble, Cornell and Chase streets and intersected by Fry street, in the city of Chicago, to be devoted to public use as a small park. The fee simple title to all the lots was in Henrietta A. Boal, and they were practically covered with buildings of the cheaper sort, occupied, with very few exceptions, by Poles who could not speak English. The premises formed one of the most congested districts in the city, and, with only two or three exceptions, there was more than one building on each lot, and in some instances three or four. The buildings were owned by the different lessees under ground leases, all containing the same general provisions as to payment of rent, taxes, water rates, observance of health ordinances, etc. The leases all expired at the same time, and when the petition was filed they had about seven and one-half years to run. On some of the lots there were barns, sheds and out-buildings in addition to two or three houses,

and there were about three hundred leasehold estates. The buildings were all frame buildings, varying in age from twenty-five to forty years, and the land on which they stood was several feet below the level of the surrounding streets. After a jury had been empaneled, they were sent, in charge of an officer, to view the premises, and after such view and hearing evidence they brought in their verdicts fixing the compensation to be paid to the several owners. Quite a number of the cases were settled and there was no controversy about the compensation to the owner of the fee simple title. A motion was made to set aside the verdicts and for new trials, and that motion being overruled, a motion in arrest of judgment was made and overruled. Exceptions having been duly entered, an appeal was allowed to this court and was perfected. At the October term, 1907, of this court, the bill of exceptions was stricken from the files so far as it related to the appellee Gruener, and inasmuch as the errors assigned only arise upon matters contained in the bill of exceptions, no alleged error can be considered as to him. The assignment of errors relates to rulings of the court on the admission of testimony and in giving and refusing instructions, and also in granting a new trial to the Columbus Brewing Company, and giving judgment in favor of that company without deducting the same from the compensation already awarded to its lessor. It is also alleged that the verdicts are contrary to the evidence and excessive in amount.

Counsel for appellees insist that the appeal should be dismissed for the reason that it was taken from the verdict of the jury and not from the judgment. The record, as originally written by the clerk, showed a regular and formal judgment, which was followed by a prayer for an appeal from the verdict, and this was due to a mistake of the clerk. The judgment was entered at the April term, 1907, of the circuit court, and the mistake was corrected by an order of the court at the July term, 1907. Counsel say that

the error could not be corrected after the expiration of the April term, but the defect being one which arose from a mistake of the clerk in writing the record, it could be rectified by the court at any time so as to make the record speak the truth. *Southworth* v. *People,* 183 Ill. 621.

The record is not free from error, and, in fact, errors of the court during the trial were not infrequent; but after reading all the evidence we have concluded that the errors would not justify a reversal of the judgment for the reason that a result more favorable to the petitioner could not be obtained by another trial. The evidence for the petitioner consisted mainly of the opinions of three real estate experts who examined the premises and estimated the values of the leasehold estates. After forming an opinion as to the reasonable rental value they deducted the general taxes, ground rent, water rates and insurance; taking the remainder as the net rental, they cut it in two and then took one-half of the amount as present value. The basis for that division was, that there would be losses by vacancies during the remainder of the term; loss of rent through tenants who would not pay; the facts that there might be a decrease in rentals by general decline of prosperity, and that the health ordinances of the city might possibly be enforced and buildings be condemned for their unsanitary condition. They also included possible losses by fire and the expense of repairs, and added a discount for receiving the money at the present time in a lump sum, instead of having it come from month to month for the remaining period. The estimates of these witnesses were not applicable to a considerable number of the three hundred buildings, since losses by vacancies and insolvent tenants could not apply to cases where the owner of the leasehold occupied his own premises and did not sub-let to others. The possible decline of rental values was also purely speculative, and we find nothing in the record indicating a probability of that sort. Witnesses for the defendants gave to the jury their opinions as to the

rental value and the values of the leasehold estates, and they allowed nothing for the loss of rent, in any case, by vacancies or the non-payment of rent. They figured nothing for repairs, losses by fire or the possible enforcement of the health ordinances by the city. Many of the buildings were sub-let, and the jury were fully justified in concluding that the estimates of petitioner's witnesses were too low and those of defendants' witnesses too high. The verdicts were between the two, and appear to us to be about what the jury would naturally and properly estimate the values to be.

The errors of the court were of a minor character and we do not think that they materially affected the result. On the cross-examination of the first witness for the petitioner he was asked what the value of the leasehold of a certain lot was, estimating that there was a first-class saloon business conducted there. The witness stated that he could not answer on that basis, and the attorney for the owner of the leasehold moved to srike out the testimony of the witness with reference to the value of that leasehold, and the court struck it out. This was error, because the amount of business transacted in the saloon or the profits of a saloon business, which could be carried on anywhere, was not an element to be considered. Furthermore, the question required the witness to assume that there was a first-class and profitable saloon business conducted on the lot, of which there had been no proof, if the fact could have been considered at all.

In cross-examining the witnesses for the petitioner, the attorneys for defendants frequently asked them to assume that a building was actually bringing in, as rent, a sum that was larger than the estimates of the witnesses, and asked if that fact would make any difference in their estimates. The court overruled all objections to such questions and in so doing erred. The question in each case amounted to this: "If the actual rental or income of the building is greater than you think the rental value to be, would that

fact make any difference in what you think?" The assumptions in many cases were not proved, while the effect was to get before the jury supposed facts assumed by the questions. The time of the court ought not to be wasted with cross-examinations of that kind, and the same rule was not applied to both parties.

When the petitioner sought to have computations of value made upon the basis of actual rent received the court would not permit it to be done, and it is now urged that the court was right in applying the rule to the petitioner, for the reason that it might be that a charitable father-in-law would permit a son-in-law to occupy premises owned by him for less than the actual rental value. It was competent for either party to prove the actual rent received, and if there was any case of a charitable father-in-law, the jury could have been advised of that fact.

The owner of one leasehold was a part owner of a brewery, and the court permitted him to show that he had sublet part of the premises for a saloon, and to prove whose beer was sold in the saloon, the average monthly profit of the saloon and the profit of the brewery on the beer sold. This was error, for a reason already stated.

The court allowed to all the defendants who were engaged in any business the profits for one month for what was termed an interruption of business consequent upon moving. This was an arbitrary allowance, based on the average profit for a year, fixed by the owner of the business, and in some cases there was practically no interruption in business, as in the case of a teamster, who only had to drive his team to another barn, or a coal dealer, who had practically no stock to move. No objection was made to allowances for interruption of business, so that the question whether such allowances were proper is not before us, and the only objection is, that the sums were not fixed with reference to actual losses by interruptions. It is true that the rule fixed by the court was arbitrary and not based on evi-

dence, but the amounts were not large and the error would not justify reversal of the judgments.

Some rulings are complained of that we do not regard as erroneous. A witness testified that the extreme limit of age for frame buildings, considering ordinary repairs, was thirty years, and that such limit was based on the general experience of engineers, builders and architects. The witness was then asked if there were tables on that subject which were accepted by builders, engineers and architects, the same as mortuary tables are accepted by insurance companies and others as to duration of life. The question being objected to, the court sustained the objection. The witness had already testified to a uniform extreme limit of age for frame buildings with ordinary repairs and that it was based on general experience, and the matter related to a subject within the common knowledge and experience of the jury and people generally. If the subject was a proper one for expert evidence the court did not err in the ruling. Where witnesses for the petitioner testified to very small values of buildings the court permitted them to be cross-examined as to whether general and extensive repairs had not been made recently on such buildings, and evidence was also admitted that such repairs were made. The inquiry was concerning the fair cash market value of the property taken at the time of filing the petition, and it was proper to prove the present condition of a building and the fact that it had recently been thoroughly repaired, as affecting the market value.

The court modified instruction No. 4 asked by the petitioner, which stated that the compensation to be paid was the fair cash value, in the market, of the leasehold interest and buildings on the various lots at the date of filing the petition, by adding thereto the following statement: "Just compensation is the payment to another of such a sum of money as will make him whole, so that upon the receipt of the same he will be no poorer by reason of the taking of

his property than he would be if the same were not taken."
The definition is correct in stating a minimum below which
the jury should not go, and the criticism of counsel is, that
when the court undertook to state a rule, a corresponding
maximum should have been stated beyond which the jury
should not go. It may be that perfect accuracy would re-
quire such a statement, but we do not think the jury could
have been misled by the instruction and have supposed it
would be proper to give the defendants more than would
make them whole.

Instruction No. 5 asked by the petitioner stated a cor-
rect rule as to market value, and the court modified it by
adding a paragraph which was unnecessary but which did
not materially change its meaning, and was therefore not
prejudicial.

The court refused to give an instruction asked by peti-
tioner directing the jury not to allow anything to the owner
or owners of any real estate or buildings for the cost of
building sidewalks or for the value of any sidewalk, stating
that the petitioner was not proceeding to condemn any side-
walk, and that the sidewalk, when built, becomes the prop-
erty of the city. The court had admitted evidence of the
cost of a sidewalk, and the instruction was properly refused
for the reason that a sidewalk enhances the value of prop-
erty in front of which it is laid, and the jury would have
been led by the instruction to exclude such enhanced value.
The law authorizes a city to charge the whole cost of a side-
walk upon the property, and in special assessment proceed-
ings the whole cost is always charged against the property,
which can only be done on the ground that the value is en-
hanced to the extent of the cost.

Another instruction tendered by the petitioner and re-
fused, directed the jury not to allow anything to the defend-
ants for money expended upon their buildings or premises
or for any addition built or added to any building. The
court was right in refusing the instruction. While the cost

of additions and improvements upon the buildings was only to be considered in determining the value of such buildings· when the petition was filed, the fact that repairs had been made and additions erected before that time was material on the question of value.

The court refused to give an instruction presented by petitioner stating that when no contest was made and no evidence offered by any defendants they should find the value to be as fixed by the witnesses for petitioner. The jury would have had no right to ignore or disregard the evidence of petitioner's witnesses in such cases, (*Dupont* v. *Sanitary District,* 203 Ill. 170,) but they were also permitted to view the premises and observe the appearance, situation and condition of the buildings, and they were not bound to base their verdicts solely upon the testimony for the petitioner. Some of the defendants did not appear or offer any evidence, but they had a right to the judgment of the jury both on the testimony and the personal view.

Instruction No. 7 given at the request of the defendants defined market values correctly, but was followed by this statement: "The market value of the property is the value it has to the present owner, and not the value it will possibly have in the hands of the party condemning it." The statement was incorrect in defining market value as the value to the present owner, and conveying the idea that the value which he attaches to it is the proper measure of damages.

Instruction No. 18 given at the request of defendants advised the jury that they should not consider any remarks of either court or counsel made during the trial of the case as evidence, and should give such remarks no consideration whatsoever in determining the just compensation to be paid defendants, or either of them, unless based upon the evidence. It is objected to as minimizing the effect of counsel's argument, and it is true that argument may be based upon matters of common knowledge not testified to by any

232—17

witness. Counsel had a right to present to the jury considerations based on facts known to every one, although not sworn to, but we do not think the jury could have been misled by the instruction to the injury of petitioner.

The court granted a new trial to the Columbus Brewing Company as to lot 25. That company has a lease from Katherine Neu for the first floor (consisting of a store, four living rooms in the rear and a basement,) of the front building on the lot, and the verdict rendered by the jury fixed the compensation to that company at one dollar. The court set aside the verdict for inadequacy and granted a new trial. The jury was waived and the court entered judgment for $306.60. The amount is not objected to, but it is contended that it should have been deducted from the amount allowed Katherine Neu. Inasmuch as the jury had fixed the damages of the company at one dollar, it seems that they did not include the company's damages in the amount allowed to its lessor. It is not to be presumed that the jury included any damage for the company in the allowance to Katherine Neu, and the court did not err in refusing to make the deduction.

A review of the whole record has brought us to the belief that there would be no prospect of a more favorable result for the petitioner upon another trial, and therefore a new trial ought not to be granted. It is quite manifest that in many cases the values were under-estimated by the witnesses for petitioner, and the jury might very properly have entertained a different opinion from the expert as to the extreme limit of the age of a wooden building with ordinary repairs. It is equally clear that the witnesses for the defendants over-estimated the values, but their estimates were not adopted by the jury, and we think that the verdicts were not far from the true values.

The judgment is affirmed.    *Judgment affirmed.*