61 Ill. App.2d 25 (1965)
208 N.E.2d 879
In the Matter of the Special Assessment to Pay the Cost of Curbing, Grading, Paving and Otherwise Improving the Roadway of 30th Street and Other Streets in the Village of Westchester, Cook County, Illinois, Petitioner-Appellee,
v.
Henry Williamson, Rosemary Williamson, et al., Objectors-Appellants.
Gen. No. 49,747.
Illinois Appellate Court  First District, First Division.
June 30, 1965.
*26 *27 Harl L. McAllister and Davis, Dietch & Ryan, of Chicago (William L. Ryan and Arthur F. Cichorski, of counsel), for appellants.
Anderson, Drolet & McDonnell, of Chicago (E.F. McDonnell, Jr., and Leon LeCour Drolet, of counsel), for appellee.
MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.
This is an appeal by nine owners of property in the Village of Westchester, Illinois, hereafter called the objectors, from the confirmation by the circuit court of a special assessment which the Village petitioned to have levied in order to pay the cost of a local improvement consisting of the curbing, paving, and grading of certain of the Village streets. The appeal presents two questions: first, was it reversible error for the trial court to deny the objector's request to use the discovery procedures which are provided for in the Illinois Civil Practice Act and, second, was it reversible error for the trial court to exclude the testimony of certain of the objectors' witnesses.
The record shows that under the Municipal Code provisions governing local improvements, the Village filed a petition in the circuit court asking that steps be taken to ascertain what property would be benefited by the proposed improvement, to ascertain the amount of such benefits and to levy a special assessment to pay the cost of the improvement. As required by the statute (Ill Rev Stats 1963, c 24, § 9-2-43), three documents were filed with the petition: a copy *28 of the Village ordinance authorizing the improvement, a copy of the recommendation of the Village Board of Local Improvements concerning the improvement in question, and a copy of the estimate of the cost of the improvement. Pursuant to the statute (Ill Rev Stats 1963, c 24, § 9-2-44), the Village Board of Improvements appointed a commissioner who made an assessment of the cost of the improvement, determined what property would be benefited thereby and prepared an assessment roll apportioning the cost of the improvement to that property which would be so benefited.
The objectors, as they are authorized to do under the statute (Ill Rev Stats 1963, c 24, § 9-2-55), subsequently filed objections to the assessment. They also filed interrogatories to be answered by the Village and they filed a notice to take discovery depositions of the President of the Village Board of Trustees and of two Village engineers. The Village objected to these discovery procedures and the court sustained the position of the Village and disallowed discovery.
In accordance with the statute (Ill Rev Stats 1963, c 24, § 9-2-57), the trial court, sitting without a jury, heard argument on and overruled the legal objections to the assessment.[*] Also pursuant to the statute (Ill Rev Stats 1963, c 24, § 9-2-58), a jury trial was held on the objectors' contention that they were not benefited by the improvement to the amount that they were assessed. At this trial on the issue of benefit the testimony of three of the objectors' witnesses was stricken. After both parties presented their evidence, *29 the Village moved for a directed verdict in its favor. The court granted the motion and entered judgment on the verdict. The objectors appeal from the order overruling their legal objections and from the judgment confirming the assessment.
The objectors argue two grounds for reversal. First they contend that the trial court committed reversible error in denying them the use of the interrogatories and discovery depositions under the Illinois Civil Practice Act. The trial court denied the use of these discovery procedures on the ground that the provisions for discovery in the Civil Practice Act do not apply in local improvement and assessment matters because discovery in these matters is provided for in the local improvement provisions of the Municipal Code and hence this special statute, not the Civil Practice Act, controls. We find no error in the trial court's determination.
[1] Section 1 of the Illinois Civil Practice Act (Ill Rev Stats 1963, c 110, § 1) defines the scope of the Act. It provides that the Act applies to all civil proceedings except those in which the procedure is regulated by separate statutes. The section further provides:
In all those proceedings the separate statutes control to the extent to which they regulate procedure, but this Act applies as to matters of procedure not so regulated by separate statutes.
We believe that the local improvement sections of the Municipal Code which provide for personal and public notice and public hearings are the type of procedure regulating provisions of a special statute which section 1 of the Civil Practice Act was intended to include. A review of the local improvement sections of the Municipal Code shows that the following provisions for notice and public hearings have been made. *30 The Board of Local Improvements, which is empowered to originate a scheme for local improvement by adopting a resolution describing the proposed improvement, must hold a public hearing on such resolution. Notice of the hearing must be mailed to those persons who paid the last general taxes on the property fronting on the proposed improvement. The notice must be mailed at least five days before the hearing and must contain the following: the substance of the Board's resolution, the estimate of the cost of the proposed improvement, where such an estimate is required, and a notification that the extent, nature, kind, character and estimated cost of the proposed improvement may be changed by the Board at the hearing. (Ill Rev Stats 1963, c 24, § 9-2-9.) At the hearing the Board must meet and hear the representatives of any person desiring to be heard on the necessity, nature or cost of the proposed improvement. If there are objections at the hearing, the Board must adopt a new resolution, and if the improvement is not thereby abandoned, the Board must prepare for submission to the corporate authorities an ordinance prescribing the nature, character, locality and description of the improvement. (Ill Rev Stat 1963, ch 24, § 9-2-10.) Upon presentation to the corporate authorities, the ordinance must be published along with the Board's recommendation and the cost estimate at least ten days before the corporate authorities act upon it. (Ill Rev Stats 1963, c 24, § 9-2-13.) After the passage of the ordinance, the corporate authorities must file a petition in an appropriate court in order to levy a special assessment for the proposed improvement. To the petition must be attached a copy of the ordinance, a copy of the Board's recommendation and a copy of the cost estimate. (Ill Rev Stats 1963, c 24, § 9-2-43.) After an assessment roll has been prepared, notice must be mailed to those persons who pay the *31 general taxes on the affected property. The notices must be sent at least 15 days before the application is made for confirmation of the assessment. The notices must indicate the nature of the improvement, the fact that proceedings are pending, the time and place of the filing of the petition and the assessment roll and the time and place at which the application for confirmation will be made. (Ill. Rev Stats 1963, c 24, § 9-2-47.) The corporate authorities must also publish a notice of the assessment at least twice, not more than thirty nor less than fifteen days in advance of the time at which confirmation of the assessment is sought. (Ill. Rev Stats 1963, c 24, § 9-2-53.) It is apparent that the purpose of these local improvement provisions of the municipal code was to give to property owners ample opportunity for securing any information which might provide grounds for objecting to the assessment. We believe that these procedures, which were followed in the case at bar, constitute a built-in scheme of discovery which is specifically tailored to this type of special assessment proceeding, and hence, that these discovery procedures, not those of the Civil Practice Act, apply in this proceeding.
The objectors next contend that at the trial on the issue of benefit the court improperly struck and excluded the testimony of three competent witnesses who were called by the objectors as experts to testify on the amount of the benefit to their property by virtue of the improvement. The Village argues that the testimony of these witnesses was properly excluded because the witnesses are not qualified to give their opinions on the benefits of the improvement to the objectors' property and because their knowledge of the property values in the Village was based on hearsay.
[2, 3] We agree with the objectors that the exclusion of this evidence was reversible error. The rule by which to determine the competency of a witness to *32 testify to the value of the property is that the witness must have some peculiar means of forming an intelligent and correct judgment as to the value of property or as to the effect on the property of a particular improvement beyond what is presumed to be possessed by men generally. Trunkline Gas Co. v. O'Bryan, 21 Ill.2d 95, 171 NE2d 45; County of Cook v. Holland, 3 Ill.2d 36, 119 NE2d 760; Illinois Light & Power Co. v. Bedard, 343 Ill. 618, 175 NE 851; Mauvaisterre Drainage & Levee Dist. v. Wabash Ry. Co., 299 Ill. 299, 132 NE 559. Under this rule we cannot agree with the Village or the trial court that these witnesses were not qualified to testify as to the value of the benefit to the objectors' property on the basis of their experience. The first of these witnesses, Henry L. Uteg, was a qualified, professional consulting engineer who specialized in special assessment matters. He served as a consultant and commissioner's deputy in the Village of Morton Grove, Itasca, East and West Dundee, Deerfield and South Elgin. The record reveals that he had experience in the field of special assessments especially regarding the cost of putting in streets, sewers, curbs and the like and regarding the benefits which accrue to property owners from such improvements. On many occasions he had determined the value of benefits accruing to property in other villages from similar improvements. In the matter in question, not only did he examine the assessment roll, the files, plans and specifications in the assessment, but also he recomputed the assessment roll as far as it concerned the objectors. In addition, he viewed the area in which the improvement was to be placed and particularly the objectors' property.
[4] Another of these witnesses, Hugh F. MacKinnon, had been a real estate broker and appraiser for thirty-three years. He had bought and sold real estate in many places in the city of Chicago and in *33 Cook County. He also specialized in making appraisals of real estate. He had appraised property for individuals, financial institutions and municipal bodies including the Chicago Board of Local Improvements. He inspected the involved property and considered the area and the way in which it was being developed. It also appears that he appraised many similarly situated properties in nearby villages.
[5] The third witness, Robert Maloney, had been a realtor for eight years. He testified that he was familiar with real estate near Westchester; that he had handled real estate transactions in Oak Park, River Forest and Hillside; that he had occasion to be in Westchester about twelve times a year; that his office had handled the sale of several properties in Westchester; and that he had listed several properties in Westchester. He further stated that he was familiar with special assessment values in most of the suburbs west of Chicago; that he had investigated the value of properties in the past in order to determine the effect of improvements; and that he examined the involved property and the surrounding area.
[6, 7] The Village argues that despite the witnesses' qualifications just reviewed, their testimony is incompetent because the witnesses did not have personal knowledge of real estate values in the Village. They base their argument partly on the testimony of all three of the witnesses that they had not personally bought or sold property in the Village. We do not believe that this fact makes the witnesses' testimony incompetent for it has been clearly settled that in order to be competent to testify to the value of land, it is not necessary that the witness be an expert or be engaged in the business of buying and selling similar properties in the locality. Department of Public Works & Bldgs. v. Divit, 25 Ill.2d 93, 182 NE2d 749; Department of Public Works & Bldgs. v. Bohne, 415 Ill. 253, *34 113 NE2d 319; People ex rel. McDonough v. Goldberg, 354 Ill. 423, 188 NE 428. Knowledge of sales in the area is always desirable; however, objection to opinion testimony on the grounds that it is not based on such knowledge is only an objection to the degree of the witness's experience and as such the objection goes to the weight of the testimony and not to its competence. Department of Public Works & Bldgs. v. Pellini, 7 Ill.2d 367, 131 NE2d 55; Forest Preserve Dist. v. Kercher, 394 Ill. 11, 66 NE2d 873; Department of Public Works & Bldgs. v. Diggins, 374 Ill. 11, 27 NE2d 826; Chicago & Evanston R. Co. v. Blake, 116 Ill. 163, 4 NE 488.
[8] The Village also argues that the witnesses' testimony is incompetent because of certain other testimony, namely, Mr. Uteg's statement that he was not aware of the value of Westchester real estate and the testimony of the other two witnesses that they based their opinions partly on information obtained by consulting other realtors and real estate brokers. The Village correctly cites Trustees of Schools v. Kirane, 5 Ill.2d 64, 124 NE2d 886, for the proposition that in order for testimony on the value of property to be competent, the witness must have actual, not hearsay, knowledge of other sales or of other real estate values. However, the facts in that case are not like those in the case at bar and hence it is not controlling here. In Kirane, a condemnation case, the witness, whose testimony was held to have been erroneously admitted, was a real estate broker employed by the State to appraise real estate and to negotiate for its sale to the State. It appeared that the witness had maintained an office in Rockford, but had never been in business in Belvidere where the property in question in that case was located. The witness had viewed the property and had made inquiries of other persons concerning real estate values in Belvidere, *35 but he admitted that he had no personal knowledge of the property values in that city. Unlike the present case, however, there is no testimony in Kirane which is comparable to Mr. Uteg's testimony that he had experience relating to the cost of special assessments and relating to the value of benefits conferred by similar local improvements. Moreover, there is nothing to show that like Mr. MacKinnon here, the witness in Kirane had appraised many similarly situated properties in nearby cities. Finally there is nothing to show that like Mr. Maloney here, the witness in Kirane had listed property for sale or had handled the sales of property in the city in question and in nearby cities.
We believe that Kirane is limited to those cases in which the testimony is based exclusively on information obtained from conversations with others and in which the witness specifically denies any personal knowledge of real estate values in the involved or similarly situated cities. Where, as in the instant case, there is evidence that the witnesses had extensive experience in the valuation of benefits conferred by local improvements or that the witnesses had experience in the value of real estate in other nearby similarly situated villages, their testimony is competent and should be admitted.
For the reasons stated, the judgment of the County Division of the Circuit Court of Cook County confirming the special assessment is reversed and the cause is remanded for a new trial.
Reversed and remanded.
MURPHY and KLUCZYNSKI, JJ., concur.
NOTES
[*] Of the 68 objections, all but the two concerning benefits were overruled. The legal objections which were actually argued to the court included the following: the petition contained only conclusions as to the benefit to the Village; proof as to the publication of the ordinance was lacking; the cost estimate was not properly signed; the estimate was vague and lacked specificity; the petition improperly included certain improvements.