LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellant, *v.* RAYMOND G. FLOOD *et al.*, Defendants-Appellees.

Second District   No. 76-108

Opinion filed August 5, 1977.

Terrence J. Brady, of Morrison & Nemanich, of Waukegan, for appellant.

Daly & Daly, of Waukegan, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Lake County Forest Preserve District (hereafter the plaintiff), appeals from a jury award made in a condemnation proceeding in which it sought to condemn the westerly 3.29 acres of a 10-acre tract owned by the defendants. The jury awarded the defendants $19,200 for the 3.29 acres taken and $20,400 as damages to the remainder. On appeal the plaintiff seeks a reversal of the award made for damages to the remainder or, in the alternative, a new trial.

Defendants' property is located in the village of Mettawa in Lake County, Illinois. The entire tract comprises 10 acres that is generally rectangular in shape having approximate dimensions of 1200 ft. by 333 ft. The improvements on the property consist of a large ranch home with a three-car garage that was built in 1972 by the Edward C. Johnson family (named defendants); there is a five-stall riding stable with a board fenced corral adjacent to the residence on the west. The property is zoned R-1 under the Mettawa zoning ordinance; the water and sewage facilities consist of a well and septic system.

The Des Plaines River flows in and along the western part of the property; .73 acres of the westerly 3.29 acres plaintiff seeks to condemn lies in the Des Plaines river bed; the remaining 2.56 acres sought constitutes all of the river front property owned by the defendants; a barbed wire was constructed along the west bank with a gate that opens toward the river. The western 3.75 acres is thickly wooded and the west 5 acres of the entire 10-acre tract is located in the flood plain as the same is defined in the zoning ordinance of the village of Mettawa. All of the valuation witnesses who testified at the trial agreed that the highest and best use of the property was for an estate type home site which was its present use and which also characterized the surrounding properties in the same neighborhood in Mettawa.

William Schwandt, a valuation witness for the plaintiff, testified that, in his opinion, the value (fair cash market value as used hereafter) of the entire 10-acre tract as improved was $150,000 and that the value of the 3.29-acre tract being condemned was $15,000; he stated that there would

be no damage to the remainder. George Duffy, a valuation witness for the plaintiff, testified that in his opinion the value of the 10-acre tract was $125,000 and that the value of the part taken was $10,000; he agreed with Schwandt that there would be no damage to the remainder.

The defendants' valuation witness, John Marling, testified, that in his opinion, the value of the part taken was $20,000 and that the value of the remainder before the taking was $180,000. He then stated that in his opinion the value of the 6.71 acres remaining after the taking was $153,000 resulting in damages to the remainder of $27,000. During the course of the trial, the jury viewed the entire premises.

First, plaintiff contends that the opinion of John Marling as to the value of the remainder was based upon hearsay and other improper and insufficient factors and for this reason should have been excluded. Marling had lived in the Libertyville area for approximately 20 years; he was primarily an appraiser and consultant but also was a licensed real estate broker. He was a member of the American Institute of Real Estate Appraisers, the Chicago Real Estate Board, the Urban Land Institute and the Chicago Mortgage Bankers' Association. He had made between 400 and 425 appraisals covering most types of properties and these appraisals had been made for banks, governmental units and private individuals. He had testified in eminent domain proceedings and also had taught real estate appraisal at seminars for the Continental Bank of Chicago. He was very familiar with the Mettawa area and grew up approximately 3½ miles from the property involved in this litigation.

In arriving at his opinion as to the damage to the remainder, Marling considered the following factors: The reduced utility of the property since the remainder would have an area of six and a fraction acres rather than 10; the size of the home being 3785 square feet and having 5 bedrooms and 3½ baths; the riding stable and corral; the loss of the entire river frontage which was a very desirable characteristic of the property; his knowledge and experience in dealing with river front properties as opposed to property not having frontage on water areas; he discussed the matter with local brokers, Quinlan & Tyson, in Lake Forest, and obtained their opinions; he also considered the nonavailability of river front property in the area.

■■ Plaintiff contends that loss in the size of the remainder was not a proper element to be considered in determining damage and cites the case of *Department of Business & Economic Development v. Brummel* (1971), 1 Ill. App. 3d 683, 274 N.E.2d 605, *reversed on other grounds*, 52 Ill. 2d 538, 288 N.E.2d 392. In *Brummel*, the court found that the loss of proximity of the remainder of the land to the municipal sewer and water facilities was not evidence that the remainder was damaged in any way by reduction in size of the entire tract; the evidence revealed that the two

parcels had different uses and were reported by a railroad right-of-way and a 25 ft. easement and that the separation actually enhanced the value of the remainder. We hold that the reduction in size was a proper consideration in this case as the evidence showed that the highest and best use of the property was for estate purposes and the effect of the condemnation was to reduce this size by approximately one-third; furthermore, the size of the home as originally constructed contemplated a 10-acre tract, and lastly it is clear that the loss of the entire river frontage and the riding paths through the wooded area along the river had a direct affect upon the character and value of the remainder.

Citing *Forest Preserve District v. Krol* (1957), 12 Ill. 2d 139, 145 N.E.2d 599, and *Trustees of Schools v. Kirane* (1955), 5 Ill. 2d 64, 124 N.E.2d 886, plaintiff contends that all of the opinions of value given by Marling should be stricken in that they are founded largely on double hearsay. In *Kirane*, the valuation witness testified on cross-examination that he had no personal knowledge of real estate values in Belvidere but based his opinion on what he had been told by others. In *Krol* the court sustained the trial court's exclusion of the testimony of one of the defendants' valuation witnesses who testified that he made his appraisal based on lists of sales furnished by others, without testifying as to their advantages and disadvantages, the character of improvements, similarity and comparability of the properties, and other facts affecting value. In this case Marling testified that he had discussed the matter with local brokers, obtained their opinions and considered sales in the area. While these considerations constituted hearsay, the valuation opinion of Marling contained other considerations as well as hereinbefore set forth. We hold that *Kirane* and *Krol* are inapplicable to Marling's testimony as a distinction was made similar to that in the case of *In re Village of Westchester v. Williamson* (1965), 61 Ill. App. 2d 25, 208 N.E.2d 879, where the court stated at page 35 as follows:

> "We believe that Kirane is limited to those cases in which the testimony is based exclusively on information obtained from conversations with others and in which the witness specifically denies any personal knowledge of real estate values in the involved or similarly situated cities."

Hearsay, so long as it is not the sole basis of the evaluation, will not render an otherwise competent opinion incompetent. *Forest Preserve District v. Harris Trust & Savings Bank* (1969), 108 Ill. App. 2d 65, 247 N.E.2d 188.

■■■ Therefore, we find that the valuation opinions of Marling, though in part based upon hearsay, were properly admitted and that Marling's opinion as to the damage to the remainder was based on proper considerations and provided a sufficient basis for the jury to find that the remainder was damaged by the taking.

The plaintiff asks in the alternative that a new trial be granted on the ground that the rulings and remarks of the trial judge with respect to the plaintiff's evidence of flooding of the defendants' property was unduly restrictive and were prejudicial and that this in effect denied it a fair trial. We think it appropriate at this time to set forth portions of the evidence and proceedings relevant to this issue.

Prior to the trial, the court granted defendants' motion in limine to prevent the plaintiff from mentioning in its opening statement that the defendants' land was within the flood plain. In connection with that ruling, the court advised plaintiff's counsel that if appraisers testified that they knew of their own knowledge or are able to ascertain that the land floods that then this testimony would be admissible.

In the course of the trial the plaintiff's valuation witness, Schwandt, was asked if he had observed the flooding condition of the Des Plaines River at a point approximately 500 feet north of the Johnson property. The court sustained defendants' objection to this question on the theory that the fact that the property flooded 500 feet north did not necessarily indicate that the Johnson property flooded. The evidence disclosed that at the point where the Des Plaines River flowed through and along the Johnson property, there was a bank approximately 5 or 6 feet high and that the water would have to rise to that height before it would flood on to the balance of the Johnson land.

The defendant, Johnson, was called as an adverse witness by plaintiff's counsel as part of the plaintiff's case. He testified that he had lived on the property since May 1972. He also stated that in the spring of 1974 the part being taken by the plaintiff had flooded.

During the trial, the plaintiff's valuation witness, Duffy, stated he personally inspected the property in May 1973 when he walked down to the river's edge; that the west portion of the tract was very mucky and had standing water in it at that time. Later, in his testimony, Duffy stated that the rear 3.29 acres had some mature trees and shrubs and undergrowth but the land was "subject to periodic flooding and was in fact at the date of my first inspection very wet and soggy indicating that it had recently flooded." The defendant interposed an objection to that part of the witness's answer which stated that the land was subject to periodic flooding, stating that there had been no evidence whatsoever to say that the property was subject to flooding. The court sustained the objection and instructed the jury to disregard the statement.

During cross-examination defendants' valuation witness, Marling, was asked if he considered that any portion of the defendants' property was in the flood plain of the village of Mettawa. The witness answered in the affirmative and stated that the portion in the flood plain was that portion adjoining the river and below the 650 elevation which the village

president told him was in the flood plain; he further stated that this property did not flood in his opinion. Defendants' counsel objected to this statement and in the course of ruling on the objection the court stated that there was some evidence admitted for a limited purpose and there was no evidence of flooding so far in the record, and he directed the jury to disregard the volunteered statement of Marling to the effect that the property did not flood. The witness did state that in his best estimate the entire part condemned in this proceeding might lie within the flood plain as defined in the village ordinance.

In chambers, prior to closing arguments, the plaintiff's counsel stated that he should be allowed to argue the inference raised by the evidence that the property flooded. The trial judge reiterated his view that there was no evidence in the record from which to draw such an inference. He further observed that it would be up to the defendants' counsel to object if the plaintiff's closing argument was improper in this respect. A review of plaintiff's closing argument reveals that plaintiff's counsel fully argued the fact that all of that portion of the Johnson property condemned was within the flood plain as defined in the Mettawa zoning ordinance and he further argued without objection that the witness, Duffy, had stated that the property was mucky and had standing water on it when he was there making his appraisal; no objection to either of these arguments was interposed by defendants' counsel and therefore we do not find that plaintiff's counsel was in any way limited or prejudiced in presenting the question of flooding to the jury in his closing argument.

■■ The statement made by the trial judge during the testimony of Marling to the effect that there was no evidence that the property flooded was inaccurate as prior to that time the defendant, Johnson, had testified that the property had flooded in the spring of 1974. However, we do not find that the inaccurate statement of the trial judge, as previously noted, requires us to grant the plaintiff a new trial. Plaintiff's counsel was allowed to argue any inferences raised by the evidence to the effect that the property flooded and that it was in the flood plain. It also must be remembered that the jury was given an opportunity to personally inspect the property and its relationship to the Des Plaines River. In light of the foregoing we are of the opinion that the remarks of the trial judge under the totality of the evidence and arguments presented at the trial are not grounds for reversal of a judgment which is, as here, based on evidence which the jury saw or could well have believed and used in arriving at their verdicts. We also point out that the evidence of flooding of the Des Plaines River would be pertinent to and effect the value of the part taken as opposed to the damage to the remainder. In this court, plaintiff seeks a reversal of the award of $20,400 for damages to the remainder or a new trial.

38

On the basis of the foregoing, we hold that no reversible error occurred in the trial of this case and the judgment of the trial court is affirmed.

Affirmed.

GUILD and NASH, JJ., concur.