(No. 33601.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* GEORGE PELLINI *et al.*—(LLOYD H. BUCHELE *et al.*, Appellants.)

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

CASSIDY, SLOAN & CASSIDY, of Peoria, for appellants.

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, JOHN RADLEY, and FRED C. KRAFT, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a condemnation judgment of the circuit court of Peoria County which was entered upon a jury verdict awarding the appellants, Mr. and Mrs. Lloyd H. Buchele, $32,500 as just compensation for the property in question.

The appellants, in challenging the adequacy of the award, ask that the judgment be reversed and judgment entered here for $53,000, or, in the alternative, that a new trial be ordered. Specifically, they contend: (1) The court erred in permitting petitioner's experts to give an opinion of value. (2) The court admitted improper evidence on behalf of petitioner. (3) The appellants were denied the right to fully cross-examine petitioner's expert witnesses. (4) The court erred in refusing to permit the appellants to introduce evidence of reproduction cost of the building. (5) The amount of the verdict was contrary to evidence relating to value. (6) The court erred in denying appellants' motion for a verdict in the amount shown by undisputed evidence, *i.e.*, net income capitalized at the rate used by petitioner's experts.

The property here condemned for highway purposes by the Department of Public Works and Buildings is located at 311 N. Perry Avenue, in Peoria, has a frontage of 72 feet on Perry Avenue, and extends 171 feet to an alley. It is improved with a two-story frame structure (estimated to be 75 years old) which has been made into ten apartments (three in the basement, four on the first floor and three on the second floor).

The building has a hot-water heating system (fired by a stoker), the walls are plastered throughout, there is ceramic tile in the bathrooms, and the exterior is covered by asbestos siding.

The appellants, who purchased the property in 1948, live in a four-room apartment on the first floor, while another apartment is occupied by a custodian who receives the rental of the apartment (estimated by appellants as $15 per week) for his services. The remaining eight apartments are rented furnished on a weekly basis, six at $15 per week and two at $13 per week. In addition, there is a single story concrete block building at the rear in which are located four garages, each renting for $7 per month. At the indicated rentals, the ten apartments and the garages would gross approximately $8,400, annually, if rented as furnished for an entire year. (This includes a figure of $22.50 a week for the owners' apartment as furnished.)

Two experts testified on petitioner's behalf. The first, John J. Manning, a real-estate broker with wide appraisal experience, gave $32,500 as his opinion of the fair market value of the property as of the date the petition was filed, September 1, 1952. His testimony disclosed that he inspected the property on three different occasions and was well acquainted with the vicinity. In fact, for a number of years he had been manager of the Diamond apartments, which were located only 36 feet from the property in question and were similar in size and other essential respects. The Diamond apartments were sold in 1952 for $26,500, plus $3,500 for furnishings.

This witness explained in detail some of the additional factors which he took into consideration in formulating an opinion of value. He said he assumed a gross rental of $8,400 and capitalized this at ten per cent after deducting estimated annual operating expenses. Some of these expenses he ascertained from the owners themselves (taxes, heat, water and other utilities), while as to others he made

estimates (insurance, management, exterior maintenance, general repairs, furniture replacement, garbage collection, supplies, custodian and miscellaneous). After deducting estimated expenses, he arrived at a yearly estimated net of $3,220. Capitalized at ten per cent this corresponded roughly to his $32,500 valuation.

The petitioner's other expert, Ellery Lay, was another real estate broker in Peoria who was experienced in the appraisal of apartment properties. He also estimated the fair cash market value at $32,500. He had viewed the premises with Manning, and they had discussed their appraisals. Likewise, he checked his estimate by a capitalization of income process similar to that employed by Manning.

The appellants offered the testimony of Robert J. Phalen, an abstracter and appraiser, who stated that in his opinion the fair cash market value of the property was $54,100. It appeared from his testimony that he had been on the premises only a few hours on the Saturday before he testified. Moreover, in making his estimate he said that he accepted the appellants' word that the expenses for a year did not exceed $2000 and that the property grossed $8,400. However, he said that the principal basis for his computation was the cost of reproduction less depreciation.

One of the appellants, Buchele, placed a value of $65,000 upon the property; and his wife testified in some detail as to operating expenses incurred in renting the apartments. Based upon her testimony, a figure of $2971.70 was arrived at as to the actual costs thus incurred during the preceding year. We discuss particulars of her testimony later in the opinion.

Finally, the appellants made an offer to prove that at current building costs it would take $85,275 to reproduce the building and garage in so far as it would be possible to reproduce it with comparable materials and at comparable dimensions. The court refused the offer and excluded this testimony.

The record discloses that prior to the taking of evidence in the cause the jury viewed the premises.

We consider the appellants' contentions in the order stated. First, did the court err in permitting the petitioner's experts to give an opinion of value?

It is recognized in Illinois that anyone who is acquainted with the property and has knowledge of value, either in the sale or ownership of property nearby, is competent to testify. The question of the degree of his experience is one of weight and not of competency. *Dept. of Public Works and Buildings* v. *Diggins,* 374 Ill. 11; *Kankakee Park District* v. *Heidenreich,* 328 Ill. 198.

The appellants objected that the opinion of each expert was based on an insufficient foundation and thus was only a guess, speculation or conjecture. However, each expert opinion was predicated upon·experience and knowledge as a real-estate broker with wide appraisal experience (both generally and in the specific area), inspection of the premises, and other investigations pertaining to the establishment of a fair market value, including consideration of a comparable sale and estimated net rental.

Further, while appellants raised no objection to the use of capitalized net rental as an element of valuation, they did seek to discredit the opinions by showing that in some instances the estimated expenses (used in capitalizing net rental) exceeded those actually incurred by the owners. For example, Manning subtracted for "vacancies and bad debts" an amount equal to ten per cent of the expected rental; whereas, Mrs. Buchele testified that bad debts since 1948 had amounted to only $50 and vacancies in 1952 resulted in a loss of only $115.22. Similarly, the experts estimated $378 as the cost of managing the property (or roughly five per cent of the rental income received by the owners); whereas, Mr. and Mrs. Buchele managed the property themselves and did not incur management expenses. In addition, the appellants sought to show that

the estimates of repairs, maintenance, replacement of furniture, garbage collection, supplies and miscellaneous, exceeded those actually incurred.

While it may be that as to certain items the estimated expenses used for appraisal purposes exceeded those actually incurred by the present owners in a particular year, there is nothing to show that the estimates so used by petitioner's experts were unreasonable as regards what a prospective purchaser would likely need to expend in utilizing the property. Apart from the testimony of Mrs. Buchele regarding expenditures made, the appellants did not introduce any evidence challenging the reasonableness of the expense estimates (or deductions from gross income) used by petitioner's witnesses in arriving at the net income for capitalization purposes.

Moreover, even if the appellants' position in this regard were to be adopted, any harm that may have resulted to them was offset by other instances where the expert's expense estimates favored the appellants. For example, no deduction was made for furniture, which the owners would be entitled to remove but which a prospective purchaser would have to replace in order to earn the estimated rental. Further, no deduction was made from gross income to cover depreciation. In addition, Manning's estimate of janitor service was $500 per year, while actually the rental value of the apartment which the appellants gave the janitor for his services was $780 per year. And it is apparent that despite the fact the appellants paid no management fees by managing the property themselves, it was proper for the appraisers to consider this as a reasonable operating expense for a prospective purchaser.

The appellants' second contention (that the trial court admitted improper evidence) is answered by the foregoing, since the evidence objected to was that given by the petitioner's expert witnesses in explaining some of the factors used by them in forming an opinion of value.

Third, were the appellants denied the right to fully cross-examine petitioner's expert witnesses?

The appellants' first asserted restriction of cross-examination relates to an attempt by their counsel to question Manning as to the condemnation cost of acquisition by the State of Illinois of the Diamond apartments. This was not proper cross-examination, for the cost of acquisition of other property by a condemning authority is never admissible. (*Jefferson Park Dist.* v. *Sowinski,* 336 Ill. 390.) Moreover, there is nothing to indicate that the witness had any personal knowledge of the transaction, as shown specifically when he was interrogated out of the presence of the jury.

The appellants further assert that they were unduly restricted in the cross-examination of Lay, particularly that they were not permitted to elicit from him matters pertaining to deductions which were used in arriving at net rental. However, we are of the opinion that appellants' counsel was allowed to fully cross-examine both expert witnesses as to all matters reasonably within the scope of the direct examination and that there is no showing of an abuse of the court's reasonable discretion determining the range of cross-examination. Cf. *People* v. *Del Prete,* 364 Ill. 376.

Fourth, did the court err in refusing to permit the appellants to introduce evidence of reproduction cost of the building?

We have held that replacement or reproduction cost of buildings is one element which a witness may take into consideration for the purpose of arriving at his estimate of value, but it is not admissible for the purpose of showing the value of the buildings separate and apart from the land itself. (See *City of Chicago* v. *Callender,* 396 Ill. 371, 380-1, and *Dept. of Public Works and Buildings* v. *Hubbard,* 363 Ill. 99, 102.) The test is not what the building cost originally, nor what it would cost at the time of con-

demnation (some 75 years later), but the fair market value of the land together with the building considered as a whole.

Further, the proferred proof of reproduction cost was a gross figure for a new comparable building before depreciation, no proof or evidence being offered as to reasonable depreciation. The element of depreciation is vital, of course, even where reproduction cost may under certain circumstances be introduced. See 172 A.L.R. 236, 243-257.

Fifth, was the amount of the verdict contrary to the evidence relating to value?

Where the jury has viewed the premises and the amount fixed is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. (*Dept. of Public Works and Buildings* v. *Lambert,* 411 Ill. 183.) The petitioner's experts testified that the fair market value of the property was $32,500. Apparently the jury was impressed by these witnesses, for they returned a verdict exactly in conformity with these estimates. There is nothing to indicate that in so acting the jury was motivated by passion or prejudice or that they were palpably mistaken in so assessing the value. A review of the evidence convinces us that the jury's verdict was reasonable, and there is abundant testimony in the record to support it.

Finally, did the court err in denying the appellants' motion for a verdict in an amount they claim to be shown by undisputed evidence, *i.e.,* net income capitalized at the rate used by petitioner's experts?

Aside from the fact that there is no statutory authority or case precedent cited to support such a procedure in a condemnation case (Cf. *Ayer* v. *City of Chicago,* 149 Ill. 262,) the appellants' position is without merit. For it is based upon an erroneous premise, namely, that there is undisputed evidence of valuation. Capitalization of net in-

come was not the only method utilized by petitioner's witnesses to arrive at their opinions, and there was disagreement as to what net income could reasonably be expected from this property.

We believe the jury verdict was properly in accord with the law and evidence and that the trial court did not commit reversible error.

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*