(No. 34714.—

THE CITY OF CHICAGO, Appellee, *vs.* DOROTHY GIEDRAITIS, Appellant.

*Opinion filed May 21, 1958.*

46

WILLIAM VIHON, and MELBOURNE A. CHAPP, both of Chicago, for appellant.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, and HAROLD M. NUDELMAN, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a condemnation judgment entered by the circuit court of Cook County upon a jury verdict awarding Dorothy Giedraitis, appellant, the sum of $12,000 as full compensation for property taken by the city of Chicago, appellee, for use as a public parking area.

As grounds for reversal, appellant now contends (1) that the compensation awarded is grossly inadequate, (2) that the trial court erred in excluding evidence of improvement costs, (3) that the appellee's witnesses improperly evaluated the true age of the building thereon, and (4) that the testimony of one of appellant's expert witnesses was erroneously stricken.

The property in question, a 24 feet by 121 feet parcel, situated at 3533 South Halsted Street, Chicago, is improved with a one-story frame, space-heated structure, the front of which is used by appellant as a tavern with the remainder having been made into a five-room apartment and occupied by her as a place of residence. A small storage shed is located towards the rear of the lot and a 4-5 feet high dirt floor basement has been excavated under a portion of the premises.

Prior to the trial of the present case the jury viewed the property, and at the hearing itself testimony was offered by both parties as to the value of this land. Clarence O. Rosain, a licensed real-estate broker testifying upon behalf of the city, stated that the surrounding area was composed largely of old buildings, some of which had been converted to business uses, and estimated their age to be at least fifty years. He described the Giedraitis property in some detail and said he thought the original structure was approximately 60 years old, but pointed out that extensive remodeling and new improvements had been recently added. Based upon its general location, age, construction, and resale value, this witness was of the opinion that the property was then being devoted to its highest and best use, and that the fair cash market value thereof was $10,742. Appellee's other expert witness, John W. Sweeney, described the subject premises as a one-story frame cottage set upon posts approximately 70 years of age, although he admitted that a new front had been placed upon the original structure and

an addition made to the rear in recent times. In his opinion, the property was best suited for semi-business and residential usage, and its fair market value was $9,800.

Dorothy Giedraitis, testifying in her own behalf, stated that she purchased the property in 1948 when only a small store was located towards the front of the lot and that since that date she rebuilt the original structure from the ground up, completely remodeled the interior, added three rooms to what is now her five-room apartment, and installed new sewer and plumbing fixtures. She admitted that the building still rests upon its original post foundation and floor joists but swore that this was all of the original structure which was left standing. After noting both her business and residential use of the property, appellant attempted to show the cost of her varied improvements, but upon appellee's objection this evidence was excluded.

Anthony Kamenjarin, a defense witness and licensed real-estate broker, after relating his general qualifications and familiarity with the Giedraitis property, testified over appellee's objections that based upon "location, reproduction, income and the physical condition," he felt the premises were worth between $21,000 and $22,000. On cross-examination this witness described in detail the condition of the building and the improvements which had been made thereon, and said that the property was best suited for its present use. When asked to state the factors upon which his value opinion was based, Kamenjarin replied that he considered the value of the lot, the reproduction of new improvements, and "rental and the rent." He denied that he gave any weight to the profits derived from the tavern operation but admitted that he took into account rentals which the owner might receive if she decided to remove herself from the premises. The witness also said that in arriving at a fair cash market value he first appraised the land and building separately and then added together the sums of these two computations. At this point appellee

moved to have all such opinion testimony stricken upon the ground that the witness did not base his considerations upon proper factors and after taking the matter under advisement, the lower court sustained the motion and instructed the jury to disregard this evidence.

George Sukys, a second expert witness for the defense, testified that he had been familiar with the property for many years and had only recently inspected the premises. As a result of these observations, he was of the opinion that the land was best suited for its present use and based upon location, construction, and desirability, the fair cash market value thereof ranged between $20,000 and $22,000.

It is of course elementary that just compensation for property taken by eminent domain proceedings must be measured by the fair cash market value thereof for its highest and best use upon the date that the condemnation petition is filed, (*City of Chicago* v. *Equitable Life Assurance Society*, 8 Ill.2d 341,) and that where a jury has viewed the premises and returned a verdict which is within the range of the evidence, such findings will not be disturbed unless clearly shown to have resulted from passion, prejudice, or palpable mistake. (*Department of Public Works* v. *Pellini*, 7 Ill.2d 367; *Department of Public Works* v. *Lambert*, 411 Ill. 183; *Jefferson Park District* v. *Sowinski*, 336 Ill. 390; *City of Chicago* v. *Chicago Title and Trust Co.*, 331 Ill. 322.) In the present case, the record indicates no such improper motivation. The expert valuations ranged from $9,800 to $22,000, and although the jury was evidently more impressed with appellee's than with the appellant's appraisal, its verdict of $12,000 was well within the scope of ·the evidence. Therefore, we cannot now say that the compensation awarded was so grossly inadequate as to warrant a reversal of the lower court decision.

Neither do we believe that the trial court erred in excluding Dorothy Giedraitis' testimony concerning amounts which she had expended since 1948 in improving the prem-

ises. Although replacement or reproduction costs may under certain circumstances be material, this proffered proof was not designed for that purpose but sought only to show the appellant's investment and was therefore clearly inadmissible. The test is not what the improvements originally cost or the sum that the owner has expended therein, but rather it is the amount for which the entire property would voluntarily sell. (*Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 Ill. 253; *Kinter* v. *United States,* 156 F.2d 5; 172 A.L.R. 244.) Furthermore, even were we to consider this as an attempt to prove replacement costs, the testimony would be equally objectionable since no evidence of reasonable depreciation was ever offered. *Department of Public Works* v. *Pellini,* 7 Ill.2d 367.

Appellant also complains that the city's expert witnesses, by emphasizing the building's original age rather than its recent improvements, improperly appraised this valuation factor and thus confused the jury. Several reasons exist to show this argument to be without merit. First of all, the record clearly indicates that each of said witnesses pointed out that extensive remodeling and improvements had been made to the original structure since appellant's occupancy and each was cross-examined by appellant's attorney upon these points; secondly, appellant at no time objected to such testimony or the witnesses' method of valuation, and by this omission waived all right to now raise the issue (*Forest Preserve District* v. *Krol,* 12 Ill.2d 139; *Forest Preserve District* v. *Kercher,* 394 Ill. 11); third, this objection was not made in appellant's written motion for a new trial and was also waived upon this ground, (*County Board of School Trustees* v. *Batchelder,* 7· Ill.2d 178); and fourth, since the jurors themselves viewed the premises, it is doubtful that they were misled as to such an evident fact.

Finally, appellant contends that the opinion testimony of Anthony Kamenjarin was erroneously stricken. We have

many times held that although any qualified individual may state his opinion as to the property value, there must be some preliminary showing of the factors upon which such opinion is based, and where improper elements have been considered, the testimony is incompetent and upon motion must be stricken. (*City of Chicago* v. *Central National Bank,* 5 Ill.2d 164; *Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342; *Forest Preserve District* v. *Hahn,* 341 Ill. 599; *City of Chicago* v. *Chicago City Railway Co.* 302 Ill. 57; *Department of Public Works* v. *Lambert,* 411 Ill. 183.) Here Kamenjarin stated that in arriving at his valuation opinion, he considered the land and buildings separately and based his computations upon a possible future rental income. It is of course evident that the fair cash market value of improved real estate is not necessarily a total of the separate land and building appraisals, but that the whole property must be considered as a single unit. (*City of Chicago* v. *Callender,* 396 Ill. 371; *Chicago Land Clearance Commission* v. *Darrow,* 12 Ill.2d 365; *Kinter* v. *United States,* 156 F.2d 5; 172 A.L.R. 244.) Furthermore, even though evidence of actual rental receipts may be admissible in a condemnation proceeding to determine the property value (*Department of Public Works* v. *Kirkendall,* 415 Ill. 214; *Forest Preserve District* v. *Krol,* 12 Ill.2d 139; *West Chicago Park Commissioners* v. *Boal,* 232 Ill. 248; *Department of Public Works* v. *Diggins,* 374 Ill. 11; *City of Chicago* v. *Koff,* 341 Ill. 520), we know of no instance in which speculative or future anticipated rentals were held to be competent valuation factors. In fact, the matter has been previously considered by this court in *Chicago Land Clearance Commission* v. *Darrow,* 12 Ill.2d 365, and *City of Chicago* v. *Central National Bank,* 5 Ill.2d 164, and in both instances we held that such theoretical profits are too uncertain and depend too much upon other contingencies to safely be accepted as any evidence of the market value. As was stated in the latter case,

"where the premises are owner occupied that element is not material, and such evidence of gross receipts would be misleading to the jury." Since the Giedraitis property was owner occupied and no actual rental had been made or was even anticipated, it is clear that the trial court did not err in striking testimony based upon such improper elements.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*