THE CITY OF CHICAGO IN TRUST FOR USE OF SCHOOLS, Petitioner-Appellee, *v.* ARCHIBALD E. BAIRD, JR. *et al.* Defendants—(Appeal of EDWARD P. BIRMINGHAM, Defendant-Appellant.)

(No. 54350; 

First District—March 17, 1971.

*Rehearing denied April 14, 1971.*

BURMAN, J., dissenting.

Andalman, Andalman & Cohen, of Chicago, (Avrum N. Andalman and Arnold L. Cohen, of counsel,) for appellant.

James W. Coffey and Frank S. Righeimer, both of Chicago, (Richard E. Girard, of counsel,) for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal by defendant, Edward P. Birmingham, from a verdict and judgment entered in the Circuit Court of Cook County following a trial in a proceeding in eminent domain. The property in question, located at 4250 West Jackson Boulevard in the City of Chicago, is a brick two-flat, purchased by the defendant in 1911, and consists of a 5-room apartment on the first floor and a 6-room apartment on the second floor and a 2-car brick garage. The lot is 25 feet by 121 feet. The defendant resided in the first apartment from 1911 until November, 1966, and continuously rented the second apartment. The jury returned a verdict in the sum of $14,500, and judgment was entered thereon. The sole question raised on appeal is that the jury was influenced in its verdict by prejudice and passion.

This property was one of twelve parcels joined in a petition to condemn filed June 20, 1968. The trial on this parcel began July 14, 1969. After the jury was impaneled, it traveled to the premises in question and viewed the property. At the beginning of the trial, the judge explained the case to the prospective jurors and introduced counsel for both sides. He referred to counsel for the School Board as "Judge

Righeimer" and said that Judge Righeimer had at one time been a County Judge in Cook County, and his assistant in the trial of the case was Mr. Girard.

The petitioner called two real estate dealers who operated in the neighborhood, Donald D. Clark and Lawrence J. Laurion, who testified respectively that the valuation of the subject property was $14,500 and $14,000. They also testified to sales of comparable property within a block of the subject property for less than the amounts of their appraisals of the subject property and fully described the property in question, the area in which it was located, and matters pertaining to the market value thereof as of the time of the filing of the petition to condemn.

The defendant called William T. Walsh, a real estate man, with offices on Madison Street and North Avenue. In his opinion, the value of the property as of June 20, 1968, was $23,000.

The defendant complains on this appeal that the jury was influenced in its verdict by prejudice and passion in the following manner: First, that the trial judge should not have referred to counsel for the petitioner as Judge Righeimer; second, that testimony by the witness, Clark, in describing the area in which the subject property was situated, stated that seven years earlier "the area experienced a racial change." He also stated, "It was considered a good neighborhood some years ago, but in recent years it has changed considerably, with property selling at low down payments." These statements were objected to by counsel for defendant and the objections overruled by the court. Mr. Clark also stated that the "riots of April, 1968 have definitely affected the shopping center" at Pulaski and Madison. Mr. Clark, after stating that he had appraised fourteen or fifteen parcels on Jackson Boulevard for the Board of Education, was asked by the attorney for the petitioner, "And the other ones were disposed of, is that correct?", and answered, "As I understand, the others were all settled." No objection was made by the attorney for the defendant either to the question or the answer.

The second witness for petitioner was Lawrence J. Laurion, who had a real estate office for forty-four years on West Madison Street, three blocks from the condemned property for ten years and later at 5943 West Madison Street. He testified that values of real estate fell when mortgage financing of property in the area could not be obtained because lending institutions and banks would not make mortgages there, and insurance could be obtained by pulling a string here and there but it was getting to the point where no one could get insurance on buildings in the area unless it was written by a governmental agency, and that premiums paid for fire insurance on property there are three times

the regular rate. He said the difficulty in getting insurance was due to the fact that "we had a big fire there, if you remember, a year ago, and ever since that time, there has been nothing but trouble to get fire insurance." No objection was made by the attorney for the defendant to any of this testimony.

Defendant's witness, William T. Walsh, testified he was in the real estate business for fourteen years, with an office on Madison Street about a mile and a quarter from the subject property. He stated he was familiar with the area where the subject property was located, and he examined the subject property. In his opinion, the fair cash market value was $23,000 as of June 20, 1968.

■■ We first consider the introduction by the trial judge of the attorney for the School Board as "Judge Righeimer." It is a fact that Judge Righeimer was County Judge of Cook County many years ago, and it was not error for the trial judge to identify him as one and the same. No objection was made on trial or in the post-trial motion, and it cannot be raised for the first time on review. *City of Chicago v. Giedraitis* (1958), 14 Ill.2d 45, and *County of Cook v. Holland* (1954), 3 Ill.2d 36, 47, where the court said:

> "[H]e cannot now on appeal raise for the first time objections to remarks of the trial judge to which no exceptions are taken at the time (*Union Drainage Dist. v. Hamilton,* 390 Ill. 487.)"

■■ As to the testimony of the experts, Clark and Laurion, there can be no question that they were well-qualified, and their statements to the effect the area had experienced a racial change and as to the riots in April, 1968, were matters of common knowledge. They had a right to take these matters into consideration in giving their opinion as to values. In *C. & E. R.R. Co. v. Blake* (1886), 116 Ill. 163, the court said at page 167:

> "The uses and capabilities of a particular property; the prices at which like property in the neighborhood is held or offered; knowledge or observation of the growth and development of towns and cities; a general knowledge of trade and business, and of the commercial advantages or prospects of the place where the property is situated, are all matters more or less taken into account by the intelligent witness in forming his opinion as to the value of a particular piece of property."

The defendant cites *Bulleri v. Chicago Transit Authority* (1963), 41 Ill.App.2d 95, to support his argument against riots and racial change. That case was reversed because counsel injected religious and political questions into his argument to the jury in a personal injury case. The case is not in point here.

The only objection remotely relevant came when counsel for the defendant objected to the witness expressing his opinion as to the neighborhood:

"Mr. Clark: It was considered a good neighborhood some years ago, but in recent years it has changed considerably with property selling at low down payments.

Mr. Carey: Your Honor, I will object to the witness expressing his opinion and conclusion as to the neighborhood.

The Court: They always allow appraisers to tell us how familiar they are with the neighborhood. They give a general description of the area in the neighborhood as to schools, transportation, commercial districts, and so forth. Proceed."

■■ In *People v. Frenchwood* (1963), 28 Ill.2d 139, the court said that an objection on the grounds that the answer was a conclusion was insufficient to preserve for review the contention that the answer was hearsay. In the instant case defendant now claims the answer was prejudicial, which we cannot consider. In the *Frenchwood* case the court said, at page 141:

"Counsel objected on the ground that this was a conclusion but the court overruled the objection. This objection on the ground that the answer was a conclusion was insufficient to preserve for review the contention that the answer was hearsay. (*People v. Sinclair*, March Term, 1963; *People v. Washington*, 23 Ill.2d 546.)"

Defendant cites *Underwood v. Pennsylvania R.R.* (1966), 34 Ill.2d 367, to stand for the proposition that objections need not be made at trial where prejudicial testimony is concerned. But the facts here are not the same. In *Underwood* there was not just one objection of doubtful efficacy, but "numerous objections and several motions for mistrial made." *Underwood* also suggests that the probative value of the evidence as compared to any inflammatory material should be evaluated before an objection is appropriate:

"Dispassionate inquiry would be permissible, but the inflammatory nature of these questions and their tendency to arouse passions and prejudices of the jury to the detriment of defendant seems to us obvious and far outweighs any possible probative value."

■■ In the instant case, the questions of counsel and the answers of the witnesses were of a totally dispassionate nature. The jury had a right to know that a large fire in the immediate area had tripled insurance premiums; that the riots of 1968 were responsible for vacant stores; that the ethnic background of the neighborhood was changing; and that as a result of these factors, mortgage insurance was almost impossible to get. We find no prejudice in this testimony.

■■ As to the propounded question and the answer given that the others were "all settled," because no objection was made to the question or the answer, it is not properly before this court. However, because it was raised later in final argument before the jury, we find no prejudice in this testimony.

The expert witness, Laurion, in explaining the difficulty in getting insurance, stated that by pulling a string here or there, they were able to get insurance, but that it was getting to the point where nobody could get insurance unless it was written by a governmental agency. This was stated as a fact which went to the formulating of his opinion as to the value of the property, and we find no prejudice in the statement. Again, no objection was made by the attorney for the defendant.

Another point argued by the defendant goes to the argument made by the petitioner's attorney in his rebuttal closing argument, claiming it was improper for the attorney to refer to the settlement of the other fourteen parcels by saying, "If the Court please, likewise, ladies and gentlemen, you heard Mr. Clark tell about the other fourteen parcels. We can't tell what we settled those parcels for. The law restrains us from doing that * * *."

■■ Defendant relies on *Dept. of Public Works and Buildings v. Pellini* 1955), 7 Ill.2d 367, where it is held that the cost of the acquisition of other property by a condemning authority is never admissible in a condemnation case. In our view of this matter, Mr. Girard was within the holding of that case by explaining to the jury that he couldn't tell them what the parcels were settled for because the law restrained him from doing that. He had a right to explain this to the jury because Mr. Clark inadvertently mentioned the settlement of the other fourteen parcels, and the jury should not be left wondering why they weren't told the amounts of the settlements. This was fair comment on the evidence. The defendant further complains that in the same rebuttal argument counsel said, "* * * but it seems that they are finally tipping their hand now. It looks like what they want to do is to add the two figures together and split the difference. * * * We respectfully submit to you that they could use a machine to add two figures together and split the difference. * * * The Court and the law has a much higher regard for the jury than to have you take two figures and split the difference. * * * We respectfully submit that that is not splitting the difference."

■■ An examination of the record indicates that counsel omitted important parts interwoven in the sentences he quoted in his brief. The full statement is as follows: "* * * but it seems like they are finally tipping their hand now. It looks like what they want you to do is add

the two figures together and split the difference. If it is not guesswork, what is it based on? What is the opinion of Mr. Walsh based on? Absolutely no facts. No sales; complete absence of what is happening in the market out there. We respectfully submit to you that they could use a machine to add two figures together and split the difference. That is not why you were selected as jurors. The Court will instruct you to bring to this courtroom your intelligence and your experience in the affairs of life, and you must weigh the credibility of these witnesses, and you must return a verdict based upon their qualifications and competency. The Court and the law has a much higher regard for the jury than to have you take two figures and split the difference. The Court will instruct you on the law and that you are to use your experience and observations in the affairs of life in arriving at your verdict. We respectfully submit that that is not by splitting the difference that some machine could do automatically. You must use your judgment; fair cash market value based on the sales in the open market. The Board of Education leaves you with that, and we respectfully submit Mr. Clark's and Mr. Laurion's figures of $14,000 and $14,500. They have to reflect what the market is in that neighborhood today, and that is the issue the Court will instruct you you must find on. We have great confidence in your doing so. Thank you very much." We find no prejudicial statements or remarks in this rebuttal argument by Mr. Girard.

■■ Lastly, the defendant complains the judge failed to give an instruction that the verdict must be within the range of values testified to by the witnesses. The judge told the jury in his opening remarks before the jury was impaneled that their verdict could not be less than the lowest amount testified to by any witness, nor higher than any amount testified to by any witness. The defendant did not submit such an instruction to the court and cannot now complain of his own omission. There is no duty on the judge to give instructions on his own motions. (*Osgood v. Skinner* (1904), 211 Ill. 229, 240.) The fact is the verdict was within the range of values testified to by the witnesses, no harm was done, therefore there is no merit to defendant's complaint.

We have studied the entire record and all the points advanced by the defendant and find no prejudice or passion, as claimed. For the reasons stated, the judgment is affirmed.

Judgment affirmed.

ADESKO, P. J., concurs.

Mr. JUSTICE BURMAN dissenting:

I dissent from the majority opinion. Edward R. Birmingham, the appellant, purchased the subject property in 1911, and he has owned the

property continuously since that date. On June 20, 1968, the City of Chicago filed a Petition to Condemn this and other parcels of land for the benefit of the public schools. In exercising the power of eminent domain to acquire privately owned real estate for public purposes, the City must act in accordance with due process of law and must give the property owner just compensation for his property. If the City and the property owner are unable to agree on what constitutes just compensation, the question of the fair market value of the property on the date of condemnation is determined by the courts. In my opinion, the record in the present case clearly shows that the verdict returned by the jury was the result of passion and prejudice.

Donald D. Clark, a realtor who was familiar with the area in which the subject property was located, appeared as an expert witness for the City. Clark testified on direct examination that he appraised fourteen or fifteen parcels of land on Jackson Boulevard including the subject property for the Board of Education. He was then asked, "And the others were disposed of, is that correct?" He replied, "As I understand, the others were all settled." It was thus pointed out to the jury that Birmingham was the only one of the property owners who had not settled with the City. Counsel for the City amplified this testimony in closing argument when he stated, " * * * you heard Mr. Clark tell about the other fourteen parcels. We can't tell you what we settled those parcels for. The law restrains us from doing that." This testimony and argument presented to the jury the following facts: first, Clark was an expert who appraised the fourteen or fifteen pieces of property for the Board of Education; second, all of the owners of the property which Clark appraised had settled with the City except Birmingham; third, the City would like a reveal the amounts for which the other owners settled, but it is restrained by law from doing that; fourth, if the City could reveal this information the jury could have no other recourse but to accept Clark's appraisal. The jury returned a verdict in the amount of $14,500.00 as testified to by Clark. It is clear, in my opinion, that Birmingham was so prejudiced by the testimony and argument that he did not receive a fair trial on the issue of the fair market value of his property.

It has long been the law in Illinois, that in a proceeding to determine the fair market value of a piece of property which is being taken under the power of eminent domain, a party may not introduce as evidence of the fair market value of that property, the cost to the condemning authority of obtaining other parcels of land. (*Department of Public Works & Buildings v. Pellini*, 7 Ill.2d 367, 131 N.E.2d 55; *Jefferson Park District v. Sowinski*, 336 Ill. 390, 168 N.E. 370.) Here the City did not

introduce into evidence the cost of obtaining the other parcels; however, it was the City which elicited the only testimony relating to the other parcels, and it was the City which commented upon them in its closing argument. The City by directing the attention of the jury to the other parcels invited the jury to speculate on what the City might have paid for those parcels, and it was implicit in the City's closing argument that the City had paid and the other property owners had accepted amounts in accord with the appraisals of Clark.

No objections were raised at trial either to testimony or to the parts of the closing argument noted above. However, when in a condemnation proceeding the arguments presented to the jury are so prejudicial that a party cannot receive a fair trial, a reviewing court will reverse the judgment even though no objections were raised. As stated in *City of Chicago v. Pridmore*, 12 Ill.2d 477 at 453, 147 N.E.2d 54 at 58, where a judgment in a condemnation proceeding was reversed:

"If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process cannot stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and ruling preserved thereon. [Citation.]"

For the reasons set forth above, I believe that the judgment of the Circuit Court should be reversed and the cause remanded for a new trial.