THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LONELL ROBINSON, Defendant-Appellant.

(No. 56343;

First District (4th Division)—June 12, 1974.

Paul Bradley and Margaret Maxwell, both of the State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant, Lonell Robinson, was tried in a jury trial in the Circuit Court of Cook County for the offenses of rape and two counts of armed robbery. He was found guilty of all charges and was sentenced to concurrent terms of not less than 5 nor more than 10 years for each count of armed robbery and a consecutive sentence of not less than 20 years nor more than 40 years for rape. Defendant appeals claiming that:

 (1) He was denied his right to a fair trial by the State's use of certain hearsay evidence;

 (2) The identification of defendant was the result of illegal detention and/or suggestive identification procedure;

(3) He was denied equal protection of the law due to his sex, since Illinois law provides that no male under 17 years of age may be prosecuted under the criminal laws, but fixes the age for females at 18;

(4) He was not proven guilty beyond a reasonable doubt; and

(5) The sentences imposed were excessive.

The facts are as follows:

At about 5:15 P.M. on the afternoon of November 26, 1970, Mr. and Mrs. Earl H. Regnier were in their room at the Conrad Hilton Hotel in Chicago. The couple was in Chicago with their daughter for a 4-H Club congress. Mrs. Regnier was sitting in a chair next to the door, her husband was in the bathroom, and her daughter was in the room next to theirs. Mrs. Regnier testified that at this time a young man walked into the room with a knife in one hand and a gun in the other. The man told her that it was a "stickup" and not to cause him any trouble. She described his voice as low and soft. The man walked to the bathroom and kicked in the door. After Mr. Regnier dressed, he and his wife were told to lie face down on the bed. The man then closed the curtains, bound the wrists and feet of the Regniers, gagged them, and removed Mr. Regnier's watch. The man ransacked the entire room.

When he had finished, the man rolled Mr. Regnier off the bed, turned Mrs. Regnier over on her back, got up on the bed and untied her legs. Mrs. Regnier kicked at him, so he put the knife to her throat, cutting her slightly, and told her to "co-operate". He then raped Mrs. Regnier, washed himself, went through Mr. Regnier's brief case, re-tied Mrs. Regnier's feet and left the room. Mrs. Regnier stated that the man had been in the room for between half and three-quarters of an hour. The lights were on in the room.

Shortly after the incident, the police arrived to take Mrs. Regnier's statement. The description given of her attacker was that of a black man, about 20 years old, 6 feet tall, 150 to 160 pounds, with "mod" dress and haircut. Mr. and Mrs. Regnier described the man to a police artist so that a sketch of the man could be prepared. They were given a number of photos to look through, from which Mrs. Regnier was able to make an identification. A lineup was held later and Mrs. Regnier identified Lonell Robinson as her attacker. (Robinson's picture had been in the group shown to Mrs. Regnier.) In making the identification, Mrs. Regnier said that she also recognized defendant's voice and the particular manner in which he moved his mouth when he spoke.

Mr. Regnier testified next, giving essentially the same testimony as his wife. He identified the defendant as the man who attacked his wife and ransacked their room at the hotel. He had viewed the photographs

and had made an identification at a lineup, though not the same lineup viewed by his wife.

Officer Daniel O'Connor, Chicago Police Department, arrested defendant for a curfew violation at about 4 A.M. on the morning of November 29, 1970. Officer O'Connor, with his partner Officer Wojnar, had responded to a call that somebody was breaking into vending machines at the Wilson Avenue platform of the C.T.A. When they arrived, the ticket agent told them to go up the stairs to the train level. The officers went up and found two men on the platform, one of whom was the defendant. Though both men denied breaking the glass on the vending machine the officers took them to the police station for investigation. Defendant, who was 17 years old at the time, was charged with a curfew violation. Officer O'Connor contacted detectives at Area 1, Homicide, regarding defendant since he noticed that he fit the physical and clothing description of a person sought in connection with a crime committed at the Conrad Hilton Hotel. He informed defendant that he had done so and advised him further that the detectives would hold him for a lineup. He did not recall if he had or had not informed defendant that he could post a $25 bond for the curfew charge, but stated that this was normally the duty of the desk sergeant or the lockup keeper. He asked defendant if his family would be concerned if he didn't contact them. Defendant said that they would not be worried.

The next witness for the State was Matthew Landers, a police officer working part-time as a security officer at the hotel. He described the condition in which he found the Regniers and their room at the hotel when he and the assistant manager entered. Mrs. Regnier gave him a description of her attacker, following which Officer Landers summoned the police to the scene. He was relieved by the chief of hotel security shortly afterwards.

Otis M. Rathel, a police officer and police artist, testified that he had drawn a sketch of the man described by the Regniers and that they indicated that the sketch was similar to the man in question.

Dennis Wojnar, Officer O'Connor's partner the night of defendant's arrest, testified that when he asked defendant if he had cut his hair recently or always wore it the way it was at the time of the arrest, defendant said: "No, I'm wearing my hair down now." Officer Wojnar described how defendant produced a comb from his back pocket and combed his hair forward so it looked much higher than it had before. This incident was not put into the arrest report, but Officer Wojnar said that every detail is not normally put into this report.

The State next presented the testimony of Officer William Donnelly,

assigned to Area 1 Homicide-Sex Unit during the time of the incident. Officer Donnelly had been in charge of staging the lineup for the Regniers. He described the procedure used and the participants. He stated that both Mr. and Mrs. Regnier, brought in separately, had identified the defendant Lonell Robinson at the lineup. The State closed its case with testimony as to various pieces of evidence found at the scene and the results of certain medical tests.

The defense presented the alibi testimony of various members of defendant's family to the effect that he had been at home on the day of the incident at the Conrad Hilton until 5 or 7 P.M. Defendant testified in his own behalf. On November 26, 1970, he was at home until 6 or 6:30 P.M. He claimed that at this time he left to meet Thomas Reeves at his home and from there, the two of them went to the Huff's home at 8506 S. Carpenter, in Chicago. They arrived there at about 8 or 9 P.M. He denied saying anything to the officers about being able to alter his hair style with a comb. The defendant, his mother, and Thomas Reeves described defendant's dress on November 26, 1970, as blue jeans, an Army shirt without sleeves with a sweatshirt over that, and a pair of Army combat boots.

In rebuttal, Officer Donnell stated that defendant had told him that he was at 85th and Carpenter almost the entire day of November 26, 1970. Officer Donnelly further stated that Mrs. Huff told him that she saw defendant at her home at about 5 P.M. on November 26, 1970. Officer Banahan testified regarding defendant's statement to him and Officer Donnelly above. The State last called Ingabor Gignac who stated that defendant was the man who entered her hotel room November 27, 1970, with a gun which she identified at trial.

In surrebuttal the defense called Mrs. Juanita Huff and Thomas Reeves. Mrs. Huff testified that she had not in fact seen the defendant until 9:30 or 10 P.M. on the night of the incident. She admitted telling the police that she had seen him at about 5 P.M. The State objected to this testimony and after a conference outside the presence of the jury, the testimony of Mrs. Huff was stricken and the jury was instructed to disregard it. Thomas Reeves testified that defendant had arrived at his house that day at 7 or 7:30 P.M. and the two of them went to the Huffs a while later. He said he did not know where the defendant had been between 5 and 6 P.M. that day.

Defendant first claims that he was denied a fair trial by the use of certain evidence by the State at trial. Defendant urges that the testimony of Officer Donnelly as to statements made to him by Thomas Reeves and Juanita Huff was hearsay and should have been excluded. It is also

claimed that the testimony of Officer Donnelly and Officer Banahan regarding the Regnier's actions at the lineup and testimony relating to the sketch drawn by the police artist were hearsay and inadmissible.

■❚ We note, however, that no objection was raised at trial to most of this testimony or the objection, if made, was not to the hearsay nature of the evidence but rather was directed at the scope of the questioning. The alleged error in admitting the testimony would therefore be waived on appeal. As Mr. Justice Goldberg stated in *People v. Henderson*, 2. Ill.App.3d 401, 276 N.E.2d 372:

> "It is fundamental and basic that this court can review only errors committed at the trial. Where no objection is raised, error, if any exists, has been waived * * * [C]laims such as impropriety in use of hearsay testimony and unsworn testimony may not be raised for the first time in this court on appeal. Unless timely objection to incompetent evidence is made at the trial level, the point may not be raised on appeal." (2 Ill.App.3d at 406.)

Further, an objection to evidence based on a specific ground waives objection to all other grounds not specified. In *People v. Washington*, 23 Ill.2d 546, 548, 179 N.E.2d 635, a claim that the admission of a list of serial numbers of bills was error since it was hearsay was deemed to have been waived on appeal where, at trial, the objection to its admission was on the specific ground that it was a carbon copy and not shown to be correct. See also *People v. Frenchwood*, 28 Ill.2d 139, 190 N.E.2d 767, and *City of Chicago v. Baird*, 132 Ill.App.2d 644, 270 N.E.2d 259.

■❚ Defendant urges this court not to consider that the error asserted was waived by failure to object at trial, but asks this court to hold that the use of this testimony was plain error. Defendant's argument is best summarized by the statement of this court in *People v. McGrath*, 80 Ill. App.2d 229, 234-235, 224 N.E.2d 660, cited by defendant:

> "Because defendant failed to object to the hearsay testimony the State contends these errors cannot be considered on appeal. However, every defendant is entitled to a fair trial, and if on the face of the record it appears that he did not get one, it is the duty of this court to consider that matter, despite the fact that objections were not urged. People v. Moore, 9 Ill.2d 224, 137 N.E.2d 246; People v. Morgan, 20 Ill.2d 437, 170 N.E.2d 529. Our Criminal Code provides that plain errors may be noticed on appeal although not brought to the attention of the trial court if they affect substantial rights of the defendant. (Ill. Rev. Stat. 1963, ch. 38, par. 121—9(a) [Now, Ill. Rev. Stat. 1973, ch. 110A,

par. 615(a)].) We feel that this case comes well within the realm of this provision and the aforementioned cases."

The "plain error" concept does not "mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court." (*People v. Pickett*, 54 Ill.2d 280, 283, 296 N.E.2d 856.) This rule is permissive and it is within the discretion of the reviewing court whether or not to consider this type of error where it was not raised before the trial court. *People v. McAdrian*, 52 Ill.2d 250, 255, 287 N.E.2d 688, citing *People v. Le May*, 35 Ill.2d 208, 212, 220 N.E.2d 184.

■■ Looking at the record presented to us on this appeal, we cannot say that the error complained of was of such magnitude so as to deprive defendant of a fair trial. We note that defendant not only acquiesced to the admission of the testimony now objected to, but in several instances asked specific questions in cross-examination regarding the description given by the victims and for other details regarding the testimony in question. It was evidently part of the trial strategy of defendant's counsel to use this testimony to attempt to weaken the State's case rather than object to its admission. We therefore hold that these alleged errors cannot be raised for the first time on this appeal nor are they of such scope to be cognizable as plain error.

■■ Defendant further argues that the striking of Mrs. Huff's testimony in surrebuttal was error. We disagree. As stated in defendant's brief, the avowed purpose of this testimony was to answer Officer Donnelly's testimony that Mrs. Huff had stated to him that she had seen defendant at about 5 P.M., on November 26, 1970, as she returned from work. Mrs. Huff confirmed that she had in fact made this statement to the officer but that she had not in fact seen him that day until much later. This testimony did not in any manner serve the purpose for which it was ostensibly offered, *i.e.*, to rebut the statement of Officer Donnelly as to what was said to him, nor would it serve to bolster defendant's alibi defense in any way since she had not seen him until long after the time of the offense. The testimony was properly stricken by the trial judge.

■■ Defendant contends that his identification as the man that committed the rape and robbery was the result of illegal detention and suggestive procedure. Initially, it is argued that it was improper to detain defendant on the curfew violation, as he should have been informed that it was possible to post the $25 statutory bond at the police station. It is also suggested that he was held incommunicado as he was not allowed to call his family. The arrest for curfew violation was, however,

proper. While the record does not affirmatively demonstrate that defendant was informed that he had a right to post bond on this charge, Officer O'Connor said that he did not remember if he informed defendant but that this would normally be the function of the desk sergeant or the lockup keeper. He did say, however, that he told defendant that he was going to be held for a lineup and asked whether his family would be worried if he didn't tell them where he was. Defendant replied that they would not be concerned.

■■ Defendant further claims that there was no probable cause to hold him for the rape and robbery. We find that there was sufficient probable cause since his physical description and clothing matched that given by the Regniers and included in the bulletin read by Officer O'Connor. In addition, the police were aware that defendant had recently worked at the Conrad Hilton.

■■ The basis for the contention that the identification procedures were unduly suggestive was that certain photos were taken of defendant after his arrest and were shown, along with several others, to the Regniers. He was then placed in a lineup. Defendant submits that the photographic identification was unnecessary and prejudicial since he was in custody, available for a lineup, and was the only person in the lineup whose picture had been shown to the Regniers. Defendant relies primarily on *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634, as support for his argument that this type of procedure was improper. Again, we must disagree with defendant. In *Holiday*, the photographic procedure was much more suggestive than that used in the instant case. There, a single photograph was shown of the defendant and the witness had but a fleeting glimpse of the defendant. On this basis, the cause was remanded for a hearing to determine the admissibility of the identification. The key factor in the decision to remand was the lack of opportunity for the witness to observe the defendant and the totality of the circumstances surrounding the identification. (See *People v. Waters*, 2 Ill.App. 3d 429, 431, 275 N.E.2d 472, and *People v. Ike*, 7 Ill.App.3d 75, 78, 286 N.E.2d 391.) Considering the totality of the circumstances of this confrontation, as we are required to do (*Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Fox*, 48 Ill.2d 239, 269 N.E. 2d 720; *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152), we find that the Regniers had abundant time during the commission of the rape and robbery to closely observe defendant and the procedure used was not so unduly suggestive as to require suppression of the identification.

The next point raised by defendant on appeal concerning identification procedures is the testimony of Mrs. Gignac for the State in rebuttal. As we discussed above, considering the totality of the circumstances of the

identification and the ample time (about 7 to 10 minutes) in which Mrs. Gignac was able to observe defendant in the hotel room, we do not find that the identification was in any way improper or unduly suggestive.

■■ Defendant alleges that he was denied equal protection of the law as a result of section 2—7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—7(1)), which provides:

"(1) Except as provided in this section, no boy who was under 17 years of age or girl who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State or for violation of an ordinance of any political subdivision thereof."

As a consequence of the above provision, defendant submits that he was denied equal protection of the law due to his sex since as a 17-year-old male he would not have been "entitled to the benefits of the juvenile court" whereas he may have had this benefit had he been a female, unless the court approved the State's Attorney's request to transfer the case to a regular criminal court under section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—7). This argument was recently presented and rejected by the Illinois Supreme Court in *People v. McCalvin*, 55 Ill.2d 161, 302 N.E.2d 342, which held that this section did not deprive a defendant of equal protection of the law. We find this case to be controlling on the question raised on the instant appeal and, therefore, defendant was not denied equal protection of the law based on his sex. See also *People v. Wilson*, 16 Ill.App.3d 118, 305 N.E.2d 602, and *People v. McCabe*, 15 Ill.App.3d 169, 303 N.E.2d 469.

Defendant submits that he was not proven guilty beyond a reasonable doubt since the only evidence of his guilt was the identification testimony of Mr. & Mrs. Regnier. It is claimed that the identification was vague, doubtful and uncertain and was the result of a suggestive confrontation supported by "prejudicial and cumulative hearsay." We have disposed of the confrontation and hearsay questions above and we are not persuaded that the testimony of the Regniers was so vague or uncertain that it would fail to "produce an abiding conviction of guilt." *People v. Gardner*, 35 Ill.2d 564, 221 N.E.2d 232.

Defendant points out what he considers to be certain inconsistencies between the description given police after the incident, the description at trial and defendant's actual appearance. We find that these alleged inconsistencies are relatively minor, if they are inconsistencies at all, and as such they would go to the weight and credibility to be given the Regniers' testimony by the jury. The jury found the testimony of the Regniers to be more credible than that offered by defendant and the witnesses testifying in his behalf. Determination of the credibility of

witnesses is the function of the jury and a reviewing court will defer to this judgment. *People v. Stewart*, 46 Ill.2d 125, 262 N.E.2d 911.

■■ The final question presented to this court for review is whether the sentences imposed upon defendant were excessive. Defendant was sentenced to serve concurrent terms of not less than 5 nor more than 10 years for each of the two counts of armed robbery and a term of not less than 20 nor more than 40 years for the rape of Mrs. Regnier. The sentence for the offense was to run consecutively with the robbery sentences. There is no question in this court's mind that the circumstances of the robbery and rape committed by defendant justify the length of the sentences imposed upon him. While we take due notice of the facts relating to the offenses, we also must take into account the person of the defendant. Lonell Robinson was 17 years old at the time these offenses took place. He had no prior record of criminal activity save for several instances where he had been arrested by the police for curfew violations. His mother testified he had gone to work to help support his brothers and sisters. In view of his age and his background, this court will exercise its power under Illinois Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)) to modify the sentence imposed on Lonell Robinson so that the sentence of not less than 20 years nor more than 40 years is changed to run concurrently with the sentences for armed robbery rather than consecutively.

The judgment of the Circuit Court of Cook County is affirmed as modified.

Affirmed as modified.

BURMAN and JOHNSON, JJ., concur.